192 N.J. Super. 486 (1984)
471 A.2d 66
AMERICAN NURSES ASSOCIATION, NATIONAL UNION FIRE INSURANCE COMPANY AND FLORA PANICUCCI, R.N., PLAINTIFFS-RESPONDENTS,
v.
PASSAIC GENERAL HOSPITAL AND ESIS, ETC., DEFENDANTS-APPELLANTS, AND THE INSURANCE COMPANY OF NORTH AMERICA, ET AL., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 18, 1983.
Decided January 10, 1984.
*487 Before Judges BOTTER, PRESSLER and O'BRIEN.
*488 John I. Lisowski argued the cause for appellants Passaic General Hospital and Esis (Morgan, Melhuish, Monaghan & Spielvogel, attorneys; John I. Lisowski of counsel and on the brief).
Walter E. Monaghan argued the cause for respondents American Nurses Association, National Union Fire Insurance Company and Flora Panicucci, R.N. (Haggerty & Donohue, attorneys; Walter E. Monaghan, of counsel; Walter E. Monaghan and J. David Woods, on the brief).
Antonio D. Favetta argued the cause for respondent Insurance Company of North America (Lamb, Chappell, Hartung, Gallipoli & Coughlin, attorneys; Mary B. Rogers of counsel and on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
The novel issue of insurance law posed by this appeal involves the typical "other insurance" clause of a policy of liability insurance pursuant to which the coverage afforded by the policy is rendered excess to other valid and collectible insurance covering the insured for the same risk. The trial judge held that an employer's contractual undertaking with its employees to indemnify them for acts of their own negligence was "in the nature of insurance" and, to the extent the employer did not shift the risk of loss it had thus assumed to an insurance company, it was a "self-insurer" of that risk. He concluded, furthermore, that this "self-insurance" constituted "other insurance" within the scope of a standard other-insurance clause. We disagree and reverse.
Defendant, Insurance Company of North America (INA) issued a hospital-medical institutional policy to defendant Passaic General Hospital (Hospital), a nonprofit charitable corporation. The policy contained an additional interest endorsement pursuant to which all Hospital employees were expressly included as insureds and were provided with liability coverage in the amount of $500,000 per claim. The endorsement further provided *489 that the Hospital itself would assume the risk for the first $100,000 of each claim. This was referred to in the endorsement as the Hospital's "self-insured sum." The endorsement also included a representation by the Hospital that it had entered into a contract with defendant ESIS, Inc., a wholly owned subsidiary of INA, whereby ESIS would provide the Hospital with such services as the investigation, defense and settlement of claims made against its employees. Finally, the endorsement provided that if any employee-insured "has another policy or policies covering a loss insured hereunder, the insurance with respect to such loss under this policy shall be excess over the amount set forth as the limit of liability under such other policy or policies." There is no question that the coverage of the endorsement extended to the professional malpractice of nurses employed by the Hospital.
During the period of INA's policy coverage, plaintiff Flora Panicucci was a nurse in the Hospital's employ. She was also a member of plaintiff American Nurses Association, which is the named insured of a policy of insurance issued by plaintiff National Union Fire Insurance Company (National) insuring each of the association's members for loss due to professional negligence in the amount of $200,000 per claim. The policy contained a clause providing that "if the member has valid and collectible insurance for an occurrence protected by this Agreement, the protection provided by this Agreement shall apply only as excess of such insurance...."
The genesis of the controversy among these insurers and insureds is a malpractice action instituted by the guardian ad litem of one Frank Wade, an incompetent, seeking recovery against Panicucci for the personal injuries he allegedly sustained as a result of Panicucci's professional negligence in rendering nursing care to him in the Hospital's post-operative recovery room to which she was assigned. That action was ultimately settled for $375,000. Pursuant to a reservation of their rights as against each other, National contributed $150,000 to the settlement payment, INA contributed $125,000, and the Hospital contributed $100,000.
*490 This declaratory judgment was thereafter instituted by American Nurses Association, Panicucci and National seeking an adjudication that the coverage afforded by National's policy was excess both in respect of INA's coverage and the Hospital's undertaking to assume the first $100,000 of the loss covered by INA. This undertaking, it claimed, was self-insurance which constituted other valid and collectible insurance within the scope of its own other insurance clause. All parties moved for summary judgment asserting that there was no genuine dispute as to any material fact, an assertion with which the trial judge agreed and with which we concur as well. It was the trial judge's conclusion, for the reasons stated in his opinion reported at 184 N.J. Super. 170 (Law Div. 1981), that the Hospital was primarily responsible for the first $100,000 of the settlement payment and that National and INA were equally responsible for the $275,000 balance. Judgment was entered requiring INA to reimburse National to the extent of $12,500. The Hospital appeals. We reverse.
The basis of the trial judge's determination was his agreement with National's contention that the Hospital, by reason of its assumption of the first $100,000 of loss pursuant to the terms of the INA policy, was a self-insurer to that extent and that that self-insurance of this indemnity undertaking was indeed other insurance within the intendment of National's policy. He therefore reasoned that the Hospital was the only insurer of the first $100,000 and therefore primarily obligated to pay that portion of the loss. As to the remaining $275,000, there was only the excess insurance afforded by both INA and National. Applying the doctrine of Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N.J. 554 (1959), he concluded that these mutually repugnant excess provisions rendered each of the two carriers primarily liable for that portion of the loss on a shared basis.
For the reasons hereafter stated, we disagree with the trial judge's conclusion that the Hospital's undertaking constituted *491 other insurance within the meaning of National's other-insurance clause. In our view, there was no other insurance within the intendment of that clause for the first $100,000 of the loss. Therefore, National is exclusively liable for that portion of the settlement. As to the balance thereof, we are satisfied that under Cosmopolitan Mut. Ins. Co., supra, National and INA share responsibility on a prorated basis.
We start from the premise that so-called self-insurance is not insurance at all. It is the antithesis of insurance. The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract. See, e.g., Universal Underwriters Ins. Co. v. Marriott Homes, Inc., 286 Ala. 231, 238 So.2d 730, 732 (1970); Johnson v. Yellow Cab Company of Philadelphia, 456 Pa. 256, 317 A.2d 245, 249 (1974). Clearly then, one may be regarded as a self-insurer as to any risk of loss to which he is subject and which is susceptible to insurance coverage but as to which he has not obtained such coverage. As a matter of colloquial usage, he is a self-insurer of that risk. But as a matter both of common sense and the fundamentals of insurance law, a failure to purchase obtainable insurance is not itself insurance. That failure simply and inevitably means that there is no insurance for that risk. Thus, the undertaking to self-insure cannot, by definition, be regarded as insurance. The same is true when only part of the risk of loss is shifted to an insurer. The insured's retained portion of the risk is the so-called "deductible" amount, if any, and the extent to which the risk exceeds the policy limits. The insured is a "self-insurer" as to both retained portions of the risk. Neither, however, constitutes insurance, and it has indeed been held that a deductible from coverage, which can be loosely termed self-insurance, does not constitute other insurance within the meaning of a standard other-insurance clause, irrespective of the size of the deductible and whether or not the deductible amount is funded and administered *492 by an insurance company. See State Farm Mut. v. Universal Atlas Cement, 406 So.2d 1184, 1186 (Dist.Ct.App.Fla. 1982); Pacific Power and Light Co. v. Transport Indemnity, 460 F.2d 959 (9 Cir.1972).
We are aware that within the general, imprecise and amorphous concept of self-insurance there is one type of self-insurance which does have a legally-recognized identity and a clearly defined consequence. We refer to the situation in which compulsory liability insurance is mandated by a statute which also provides that a person subject to the mandate may, in accordance with specified standards and upon a satisfactory showing of financial ability to bear the risk, be exempted from the obligation to purchase insurance upon issuance by a designated administrative officer or agency of a certificate of self-insurance. See, e.g., N.J.S.A. 39:6-52 (permitting the Director of the Division of Motor Vehicles to issue a certificate of self-insurance to serve in the place of the liability insurance mandated by the Motor Vehicle Security Responsibility Law, N.J.S.A. 39:6-23, et seq.); N.J.S.A. 48:4-12 (permitting the Commissioner of Insurance to issue a certificate of self-insurance to specified bus companies in lieu of any compulsory motor vehicle insurance); N.J.S.A. 34:15-77 (permitting the Commissioner of Insurance to exempt an employer by written order from the obligation to insure his workers' compensation liability).
This qualified self-insurance, as it may be termed for convenience in reference, has been held to require the self-insurer to provide the public sought to be protected by the compulsory insurance with the same "coverage" and incidents of "coverage" as he would have had to have purchased but for the certificate of self-insurance. See Comorote v. Massey, et al., 110 N.J. Super. 124 (Law Div. 1970) (qualified self-insurer pursuant to N.J.S.A. 39:6-52 is subject to the omnibus coverage requirements of N.J.S.A. 39:6-46); Transport of New Jersey v. Watler, 161 N.J. Super. 453 (App.Div. 1978), aff'd as modified 79 N.J. 400 (1979); Mortimer v. Peterkin, 170 N.J. Super. 598 (App.Div. 1979) (qualified self-insurer pursuant to N.J.S.A. 48:4-12 is required to *493 afford uninsured motorist protection in accordance with N.J.S.A. 17:28-1.1).
The substantial equivalence between compulsory insurance and a certificate of self-insurance vis-a-vis the public does not, however, necessarily support the corollary principle that as between insureds and insurers, qualified self-insurance constitutes other insurance within the meaning of standard other-insurance clauses. To the contrary, the weight of authority rejects the premise that qualified self-insurance is other insurance on the theory that self-insurance and insurance are mutually exclusive concepts. See, e.g., United National Ins. Co. v. Philadelphia Gas Works, etc., 221 Pa.Super. 161, 289 A.2d 179 (1972); Universal Underwriters Ins. Co. v. Marriott Homes, Inc., supra, 286 Ala. at 231, 238 So.2d at 730; Home Indemnity Company v. Humble Oil & Refining Co., 314 S.W.2d 861 (Tex. Civ.App. 1958), writ of error and reh'g den. 159 Tex. 224, 317 S.W.2d 515 (1958); American Family Mut. Ins. Co. v. Missouri P. & L. Co., 517 S.W.2d 110 (Sup.Ct.Mo. 1975). See also Carolina Cas. Ins. Co. v. Insurance Co., etc., 595 F.2d 128, 143 n. 53 (3 Cir.1979). And see 8A Appleman, Insurance (1981), § 4912 at 508-511. See contra Aetna Casualty & Surety Co. v. Market Insurance Co., 296 So.2d 555 (Dist.Ct.App.Fla. 1974); Southern Home Ins. Co. v. Burdette's Leasing, 268 S.C. 472, 234 S.E.2d 870 (1977); United States Steel Corp. v. Transport Indemnity Co., 241 Cal. App.2d 461, 50 Cal. Rptr. 576 (Dist.Ct.App. 1966). We note that New Jersey apparently follows the minority view. See Carolina Cas. Ins. Co. v. Belford, 121 N.J. Super. 583 (App. Div. 1972), certif. den. 63 N.J. 502 (1972). We express no view as to that decision.
Thus, while there is support for the view that qualified self-insurance constitutes other insurance, we have been unable to find any authority at all for the thesis that any other kind of so-called self-insurance constitutes other insurance. Compare, for example, the two Florida cases cited supra. In Aetna Casualty & Surety Co. v. Market Insurance Co., 296 So.2d at 555, qualified self-insurance was held to be "other insurance." In *494 State Farm Mut. v. Universal Atlas Cement, 406 So.2d at 1184, a deductible of a million dollars was held not to be "other insurance."
The final question is whether there should be any different result when the nature of the "self-insured" risk of loss is an obligation to indemnify. We do not perceive any viable conceptual basis for ascribing different consequences to that risk of loss.
As we have noted, the Hospital is a nonprofit charitable corporation. Its own tort liability to its beneficiaries, based on respondeat superior, is limited to a maximum exposure of $10,000. See N.J.S.A. 2A:53A-8. Therefore, when it assumed the risk of loss in respect of the first $100,000 of liability for an employee's negligence, it was not, beyond $10,000, assuming its own risk but rather the risk of its individual employees. To that extent, therefore, its undertaking constitutes an indemnification of another for the consequences of the negligent conduct of the other for which it would not otherwise be answerable. As we understand the implication of National's argument, it is also contending that this indemnification by the Hospital constitutes other valid and collectible insurance of its insured, Panicucci.
It is clear that all contracts of insurance are, basically, indemnity agreements. But all indemnity agreements are not insurance contracts. See, e.g., Brotherton Const. Co. v. Patterson-Emerson-Comstock, 406 Pa. 400, 178 A.2d 696, 697 (1962). As a matter of common understanding, usage, and legal definition, an insurance contract denotes a policy issued by an authorized and licensed insurance company whose primary business it is to assume specific risks of loss of members of the public at large in consideration of the payment of a premium. There are, however, other risk-shifting agreements which are not insurance contracts. These include the customary private indemnity agreement where affording the indemnity is not the primary business of the indemnitor and is not subject to governmental regulation but is merely ancillary to and in furtherance of some other independent transactional relationship between the indemnitor *495 and the indemnitee. The indemnity is, thus, not the essence of the agreement creating the transactional relationship but is only one of its negotiated terms. Illustrative of these non-insurance private indemnity agreements are those customarily contained in construction contracts in which the general contractor holds the owner harmless and the subcontractors hold the general contractor harmless. There are myriad other examples.
In our view, the Hospital's undertaking here was just such a private indemnity agreement. Clearly, it had no legal obligation to indemnify its employees for their own negligent conduct. Its undertaking to do so was a contractual matter incidental to and in furtherance of the employment relationship. Obviously as a matter of economic reality, health-care professionals employed by a hospital must be protected against the risk of loss resulting from their malpractice. They can obtain protection either by purchasing malpractice insurance themselves or by receiving protection as an incident of employment. Protection as an incident of employment can be afforded by the employer either by a private indemnity agreement or by providing insurance or, as here, by a combination of both. It was the Hospital's business decision to itself indemnify each employee for the first $100,000 of each claim and to shift to an insurance company the risk of loss for the next $400,000. The employee therefore had protection, albeit no insurance, for the first $100,000 but did have insurance for the next $400,000. We are persuaded that the Hospital's undertaking to indemnify its employees for the first $100,000 without itself shifting that contractually assumed risk to an insurer no more constitutes "other insurance" than does any other failure to obtain insurance for an insurable risk.
We are in complete accord with the observation of the Alabama Supreme Court that the term "other insurance" as used in the typical other-insurance clause of an insurance policy means, when tested by the standard of usual and ordinary meaning, "another policy of insurance covering the same risks...." Universal Underwriters Insurance Co. v. Marriott *496 Homes, Inc., supra, 238 So.2d at 732. We also regard this meaning as consistent with the basic function of all other-insurance provisions, which is to permit insurance companies to "decide among themselves which is to bear the incidence of a single loss, or whether it is to be shared and in what proportion." Cozzi v. Government Employees Ins. Co., 154 N.J. Super. 519, 529 (App.Div. 1977). Hence other-insurance clauses by definition implicate other insurance policies and not uninsured assumptions of risk of loss. Thus, whether or not the ordinary meaning of other insurance is extended to include qualified self-insurance, it clearly cannot rationally be extended to include the so-called self-insured indemnification here. We therefore hold that there was no other insurance within the intendment of the National policy covering the negligence of Panicucci up to the first $100,000 of the loss. As to that portion of the loss, National, as the only insurer, is primarily liable. The obligation for the balance of the loss is the prorated responsibility of INA and National.
The judgment appealed from is reversed, and we remand for the entry of judgment consistent with this opinion.