Mary H. BOATRIGHT and George S. Boatright, Plaintiffs-Petitioners-Appellants,

v.

Jeanette M. SPIEWAK and The Ohio Casualty Insurance Company, Defendants-Petitioners-Appellants,

ENTERPRISE RENT A CAR COMPANY, INC., Defendant-Respondent,

AUTOMOBILE CLUB INSURANCE COMPANY and Donna Shalala, Secretary of the Department of Health and Human Services, Defendants.

Court of Appeals

*No. 97–0036. Submitted on briefs October 1, 1997.—Decided October 28, 1997.*

(Also reported in 570 N.W. 2d 897.)

On behalf of the plaintiffs-petitioners-appellants and defendants-petitioners-appellants, the cause was submitted on the joint briefs of *William J. Ewald* and *Beth Rahmig Pless* of *Denissen, Kranzush, Mahoney & Ewald* and *David L. Weber* of *Pinkert, Smith, Weir, Jinkins, Nesbitt, Hauser & Weber* of Sturgeon Bay.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Frank L. Steeves and Kathleen A. Rinehart* of *Crivello, Carlson, Mentkowski & Steeves, S.C.* of Milwaukee.

Before Cane, P.J., Myse and Hoover, JJ.

HOOVER, J. Mary and George Boatright brought this action to recover damages for injuries Mary allegedly sustained as a passenger in a collision with an Enterprise rental vehicle driven by Jeanette Spiewak. The Boatrights, Spiewak and her insurer, Ohio Casualty Insurance Company, appeal a declaratory judgment denying and granting various motions.[1] All four requested the trial court to declare that Enterprise Rent A Car Company, Inc., has unlimited liability for Mary's injuries. They claim that the trial court erred by limiting Enterprise's liability to $25,000. Spiewak and Ohio Casualty also appeal the trial court's denial of their application for a declaration that Ohio Casualty's liability and duty to defend Spiewak was secondary to Enterprise's. We conclude that Enterprise's liability is limited to $25,000 and is primary to Ohio Casualty's. We therefore affirm that part of the judgment denying the appellants' motion to declare

---

[1] We granted leave to appeal on February 14, 1997.

509

Enterprise's liability unlimited and reverse that part declaring Enterprise's liability secondary.

Enterprise was sued as the owner of the vehicle. Section 344.51(1), STATS., places liability upon car rental agencies for damages caused by the negligent operation of a rented vehicle.[2] The rental agreement between Spiewak and Enterprise also required the latter to provide liability coverage and financial protection to third parties in the amounts equal to the limits mandated by Wisconsin's financial responsibility law. The parties appear to agree for purposes of appeal that Mary's damages will exceed Ohio Casualty's policy limits and the $25,000 Enterprise views as its maximum liability. The Boatrights, Spiewak and Ohio Casualty contend that Enterprise, a self-insurer, has unlimited liability for the Boatrights' damages. They further argue that Enterprise's liability is primary under the terms of the Ohio Casualty policy and applicable case law. Enterprise responds that its liability is secondary and limited to $25,000.

■

The relevant facts are minimal and not in dispute. We are called upon to apply statutes and legal precedent to the undisputed facts. Accordingly, only questions of law, which we review de novo, are presented. *Doering v. LIRC*, 187 Wis. 2d 472, 476–77, 523 N.W.2d 142, 144–45 (Ct. App. 1994). There are two general issues before the court. The first is whether, under various statutes, Enterprise's liability is unlimited or confined at $25,000. The second requires the court to consider precedent to determine whether Enterprise's liability is primary.

---

[2] All citations to Wisconsin statutes will be to the 1993–94 version unless otherwise noted.

The appellants propose several paths to the conclusion that Enterprise has unlimited exposure for the Boatrights' damages. Addressing them in the order presented, they first argue that Enterprise's liability is unlimited because §§ 344.51 and 344.01(2)(d), STATS., do not set maximum limits of liability, only minimums.

Car rental agencies that rent vehicles in Wisconsin are required to file proof of financial responsibility. Proof of financial responsibility is defined in § 344.01(2)(d), STATS.:

> "Proof of financial responsibility" or "proof of financial responsibility for the future" means proof of ability to respond in damages for liability on account of accidents occurring subsequent to the effective date of such proof, arising out of the maintenance or use of a motor vehicle in the amount of $25,000 because of bodily injury to or death of one person in any one accident . . . .

Section 344.51(1), STATS., sets forth the requirement that car rental agencies file proof of financial responsibility and provides:

> No person may for compensation rent any motor vehicle to be operated by or with the consent of the person renting the vehicle unless there is filed with the Department a good and sufficient bond or policy of insurance issued by an insurer authorized to do automobile liability insurance or surety business in this state. The bond, policy or certificate shall provide that the insurer which issued it will be liable for damages caused by the negligent operation of the motor vehicle in the amounts set forth in s. 344.01(2)(d).

The appellants refer us to cases stating that amounts in § 344.01(2)(d), STATS., are minimums, not

maximums. Further, they argue that nothing in the language of these statutes establishes a maximum liability limit. These assertions, while accurate, do not logically let alone necessarily provoke the conclusion that the statute imposes unlimited liability on all to whom it applies. None of the cases the appellants cite hold that, because the statute sets the minimum liability, a self-insured rental agency has unlimited liability to an innocent third party for damages sustained as a result of a lessee's negligence.[3] They merely confirm that those who are both subject to the financial responsibility law[4] *and* have exposure beyond the amount

---

[3] The appellants cite three cases in support of their contention that, by establishing a minimum liability, the legislature therefore intended to impose unlimited liability. The issue in *Germanotta v. National Indemn. Co.*, 119 Wis. 2d 293, 349 N.W.2d 733 (Ct. App. 1984), was whether the agency's (and its insurer's) duty under § 344.51(1), STATS., was fulfilled where the lessee had his own insurance coverage. The court held that it was not. Thus, once the lessee's insurance limits were exhausted, the injured party could look to the agency (its insurer). Primacy of liability was not at issue.

The question in *Nutter v. Milwaukee Ins. Co.*, 167 Wis. 2d 449, 481 N.W.2d 701 (Ct. App. 1992), was whether the § 344.34, STATS., 10-day extension of coverage after the insured files a notice of cancellation applies to the policy's uninsured coverage.

The court in *Carrell v. Wolken*, 173 Wis. 2d 426, 496 N.W.2d 651 (Ct. App. 1992), considered whether there was a disputed material fact regarding ownership of a leased vehicle and whether the "permissible provisions" subsection of the omnibus statute, § 632.32(5), STATS., is self-operative.

[4] Not every driver is subject to the financial responsibility law. Wisconsin does not require drivers to carry insurance. *Keane v. Auto-Owners Ins. Co.*, 159 Wis. 2d 539, 554, 464 N.W.2d 830, 836 (1991). Enterprise's obligation under § 344.51, STATS., to file proof of financial responsibility is related solely to

fixed by statute may contract to limit their risk. Thus, those who may have personal liability and must file proof of financial responsibility are free to purchase insurance coverage exceeding $25,000, and the injured's claim against the insurer is limited by the policy's limits, and not § 344.01(2)(d).

The argument concerning § 344.51, STATS., employs the same reasoning the appellants apply to the § 344.01(2)(d), STATS., analysis, with the same result. They further argue, however, that § 344.51 was intended to impose liability on a car rental company even absent the special relationship required for liability to attach under common law.[5] The appellants then combine this legislative intent with Enterprise's self-insured status and conclude that, "in essence," Enterprise is liable as the insurer of the automobile. Without passing on whether this is a fair conclusion, we note that it does nothing to indicate whether § 344.01(2)(d) exposes Enterprise to unlimited liability.

The appellants next argue that Enterprise has unlimited liability under § 344.51(2), STATS., because it did not file the bond or insurance policy required by § 344.51(1), STATS. To address this position, we must first consider other statutes that, together with

its status as a commercial vehicle lessor, whereas generally drivers are only subject to the financial responsibility law when they fail to provide security for the payment of past damages they caused or when they wish to reinstate a revoked license or prevent such revocation. *See id.* at 551–53, 464 N.W.2d at 835–36.

[5] Ownership alone is not sufficient to impose liability for damages caused by someone else's use of a vehicle. *Bacheller v. Employers Mut. Liab. Ins. Co.*, 93 Wis. 2d 564, 573, 287 N.W.2d 817, 822 (1980).

§ 344.51, provide the complete financial responsibility scheme applicable to Enterprise.

Section 344.30, STATS., sets forth the various methods by which responsibility may be proven:

> Whenever a person is required under Ch. 343 or this chapter to give proof of financial responsibility for the future, such proof may be by filing:
>
> (1) Certification of insurance as provided in s. 344.31 or 344.32; or
>
> (2) A bond as provided in 344.36; or
>
> (3) A certificate of deposit of money or securities as provided in s. 344.37; or
>
> (4) A certificate of self-insurance as provided in s. 344.16, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, the self-insurer will pay the same amounts that an insurer would have been obligated to pay under a motor vehicle liability policy if it had issued such a policy to such self-insurer.

Section 344.16(1), STATS., specifically authorizes fleet owners to self-insure through an approved self-insurance certificate:

> (1) Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance by the secretary as provided in sub. (2).
>
> (2) The secretary may, upon the application of such a person, issue a certificate of self-insurance when satisfied that such person is possessed of ability to pay judgments obtained against such person.

The appellants do not dispute that Enterprise qualified as a self-insurer, as confirmed by a Department of Transportation certificate. Enterprise did not, how-

ever, file a bond or insurance policy, which the appellants contend it was required to do under § 344.51(1), STATS. We disagree. It is true that the first sentence of § 344.51(1) refers only to a bond or insurance policy. The next sentence, however, provides that "[T]he bond, policy *or certificate* shall provide that the insurer which issued it will be liable for damages caused by the negligent operation of the motor vehicle in the amounts set forth in s. 344.01(2)(d)." (Emphasis added.) Sections 344.30(4) and 344.16(1), STATS., permit car rental agencies to meet their obligation to prove financial responsibility by filing a certificate of self-insurance and receiving a DOT certificate in return, confirming their ability to pay damages. The use of the term "certificate" in the second sentence of § 344.51(1), STATS., indicates that such a certificate satisfies the obligation this subsection imposes. To hold otherwise would be to eliminate that term from the statute, contrary both to well-settled rules of statutory construction[6] and the legislative scheme, which provides for the correspondent alternatives for proving financial responsibility set forth in § 344.30, STATS.

Assuming, however, that the appellants' construction of § 344.51(1), STATS., is correct, and Enterprise has therefore not complied with the financial responsibility law, the remedy is addressed in § 344.51(2), STATS.:

> Any person failing to comply with this section is directly liable for all damages caused by the negli-

---

[6] A statute should not be construed so as to ignore words, *State v. Okray Produce Co.,* 132 Wis. 2d 145, 150, 389 N.W.2d 825, 827 (Ct. App. 1986), or treat them as surplusage. *Mulvaney v. Tri State Truck & Auto Body,* 70 Wis. 2d 760, 764, 235 N.W.2d 460, 463 (1975).

gence of the person operating such rented vehicle to the extent that such liability could have been established if this section had been complied with.

Under either scenario, the parties and the court ultimately are directed to § 344.01(2)(d), STATS., to determine Enterprise's liability. Neither side of the controversy directs the court to any other statute to employ in this determination. Section 344.01(2)(d) defining "proof of financial responsibility," sets what the legislature has deemed a rental agency's appropriate minimum limits. It is therefore the reference for both what "an insurer would have been obligated to pay under a motor vehicle liability policy if it had issued such policy to such self-insurer,"[7] and for fixing the "extent of . . . liability"[8] under § 344.51(2) when § 344.51(1), STATS., is not complied with. With regard to the former, liability only extends as far as is imposed under § 344.51(1). That section requires financial responsibility "in the amounts set forth in s. 344.01(2)(d)."

In rejecting to this point the statutory interpretations the appellants advance to show Enterprise's perceived unlimited liability, we have not affirmatively

---

[7] Section 344.30(4), STATS., self-insurance method of meeting proof of financial responsibility.

[8] Appellants argue that the penalty under § 344.51(2), STATS., for failure to comply with § 344.51(1), STATS., is unlimited liability. They believe this conclusion is compelled by the following language in the former: "Any person failing to comply with this section is *directly liable for all damages* caused by the negligent operation of the vehicle . . . ." (Appellants' emphasis.) Once again, however, they do not reconcile their position with the qualification that completes the sentence: "to the extent that such liability could have been established if this section had been complied with."

addressed the nature of the obligation the statutory scheme actually imposes on self-insured rental agencies. We thus turn to this question.

We first suggest that the parties' references to "minimum" and "maximum" limits of liability do nothing to advance the analysis, and indeed obscure it. For example, the appellants argue that the legislature, by incorporating § 344.01(2)(d), STATS., into § 344.51, STATS., established "only the *minimum* limit of liability. Thus, the *minimum*, not the maximum, amount that a plaintiff can recover from a self-insured car rental company pursuant to § 344.51(2) is $25,000." We presume that the appellants agree, by virtue of common sense and their pointed concessions in their brief, that the actual damages suffered play a role in determining the self-insured's minimum liability. Making this assumption, we do not comprehend what the appellants mean when they claim that the minimum a plaintiff can recover from a self-insured rental agency is $25,000.[9]

In the final analysis, § 344.01(2)(d), STATS., has nothing to do with minimum or maximum *liability* in the sense the appellants argued. Rather, it simply fixes

[9] In any event, this interpretation ignores the qualification in § 344.52(2), STATS., that liability extends only to the amount that could have been established if § 344.51(1), STATS., had been complied with. Section 344.01(2)(d), STATS., however, does not set the agency's liability, but only the amount of security it is statutorily required to provide or prove to comply with the financial responsibility law.

The appellants also argue that Enterprise has unlimited liability because its DOT self-insurance certificate did not state a maximum limit of liability. We again disagree. In keeping with the above analysis, it is the statute and not the certificate that fixes the amount of security Enterprise must prove in order to come within the terms of the law.

the amount of or proof of security that a person subject to ch. 344 is responsible for filing in order to comply with the financial responsibility law. Enterprise did not need to indicate its "limits of liability" on its application because the unambiguous words of § 344.51(1), STATS., provide the amount necessary for Enterprise to comply with its obligation under that statute, "the amount(s) set forth in s. 344.01(2)(d)." That amount, $25,000, is not a minimum or maximum liability, but, in the latter statute's words, simply the amount of damages Enterprise has proven it can respond to.

■ Section 344.01(2)(d), STATS., is unambiguous and, therefore, resorting to other tools of statutory construction beyond the plain meaning of the statute's words is inappropriate.[10] We note, however, that other sections in ch. 344 support our conclusion. For example, for purposes of reinstating operating privileges after revocation for failure to pay a damage award, a judgment is deemed satisfied when payments total the applicable amount in § 344.01(2)(d), even if the judgment exceeds that amount. Once the payments total $25,000, the person subject to the financial responsibility law has satisfied the obligation that law imposes, regardless whatever separate legal obligations remain.

Having discerned the nature of Enterprise's obligation under ch. 344, STATS., we may now consider the

---

[10] The appellants rely in part on legislative history to demonstrate an intent to impose unlimited liability on Enterprise. If, however, a statute's language is unambiguous, resort to extrinsic aid for purposes of statutory interpretation would be improper. *General Tel. Co. v. A. Corp.*, 147 Wis. 2d 461, 464, 433 N.W.2d 264, 265 (Ct. App. 1988). We conclude that the statutes in question are unambiguous and therefore do not consider the appellants' legislative history references.

appellants' claim that § 344.16, STATS., imposes unlimited liability on Enterprise. We again disagree with the appellants' position; it avoids the plain meaning of the applicable statutes and is therefore fundamentally contrary to the legislature's scheme for providing or proving compliance with the financial responsibility law and is made without supporting authorities.

Section 344.16, STATS., sets forth requirements for an individual to attain self-insured status. *Popa v. Hertz Corp.*, 159 Wis. 2d 632, 636–37, 465 N.W.2d 213, 215 (Ct. App. 1990). This statute is referred to in § 344.30(4), STATS., which provides the self-insurance alternative for complying with the financial responsibility law. The latter section refers to "the same amounts that an insurer would have been obligated to pay under a motor vehicle liability policy if it had issued such a policy to such self-insurer." That amount is defined in § 344.01(2)(d), STATS., which, again, is incorporated by reference into § 344.51(1), STATS., which, in turn, applies the financial responsibility law to vehicle rental agencies. Under § 344.01(2)(d), the amount the insurance company would be obligated to pay is fixed at $25,000, the amount of security the rental agency must provide to comply with the financial responsibility law.

Appellants argue that limiting the liability of a self-insured entity, absent statutory direction, is clearly contrary to the purpose of the financial responsibility law to provide financial protection against negligent drivers. Our analysis, however, compelled by the plain meaning of the statutes in question, discloses just such a statutory directive. We recognize that under the financial responsibility scheme, there is little if any incentive for a rental agency to prove or provide security exceeding $25,000, unlike those who

are exposed for the entire amount of an award due, for example, to their causal negligence. This amount does not guarantee that innocent tort victims' full damages will be satisfied. We know, however, that the legislature's intent is to promote protection, rather than assure it since, as the appellants concede, it has not required liability insurance as a precondition to operate a vehicle in Wisconsin. Similarly, it is for the legislature to fix the amount of security it deems appropriate from a person with no common law liability whose duty arises from public policy and is imposed by statute. If the legislature deems it appropriate to introduce into the equation such a party, it certainly may set the terms by which that is done.

The appellants, hand in hand with their preceding argument, contend that a negligent uninsured driver is, in effect, a self-insured driver and is liable for the entire amount of damages, without consideration of the financial responsibility law. From this they assert that Enterprise, as a self-insurer, is in the same position as an uninsured driver and, having opted to forego insurance coverage, is therefore liable for all proven damages. The appellants contend that "[n]o logical reason exists for allowing Enterprise to limit its liability to the minimum limits established in § 344.01(2)(d), Stats., when an uninsured motorist's liability would not be similarly limited."

This argument results in the invalid proposition that Enterprise bears the same responsibility to the injured party as the negligent driver. Car rental agencies are not negligent lessees' alter egos. As noted above, they were not liable at common law for their lessees' negligent acts. *American Family Mut. Ins. Co. v. Reciprocal Ins.*, 111 Wis. 2d 308, 310, 330 N.W.2d

223, 224 (Ct. App. 1983) (quoting *Herchelroth v. Mahar*, 36 Wis. 2d 140, 153, 153 N.W.2d 6, 13 (1967)). The only legal nexus between the injured party and the rental agency is the statute. It was intended to "assure response in damages," *id.* at 311, 330 N.W.2d at 311–12, 224–25, "in the amounts set forth in s. 344.01(2)(d)." Section 344.51(1), STATS. Statutes in derogation of the common law must be narrowly construed. *Hainz v. Shopko Stores,* 121 Wis. 2d 168, 175, 359 N.W.2d 397, 401 (Ct. App. 1984). There is nothing in § 344.51, STATS., that supports the more pervasive departure from the common law to place car rental agencies in the shoes of the negligent lessee for all applications of tort law.

The appellants next raise various arguments under the omnibus statute, § 632.32(3)(a), STATS. They claim that the statute applies to Enterprise because, as a self-insured, it is in legal effect an insurer. These arguments fail for various independently dispositive reasons. First, the statute controls "policies . . . issued to an owner." Enterprise did not issue a policy; it proved to the secretary of the DOT that it could satisfy a $25,000 damage award and thus complied with the financial responsibility law. Further, § 632.32(3)(a), STATS., refers to "any motor vehicle described in the policy when the use is for the purposes and in the manner described in the policy." There is no policy and therefore no vehicle, purpose or manner is described.

Of greater concern is the appellants' implication that two discrete statutory schemes impose the same essential obligation on a self-insured rental agency. Enterprise is already liable to Spiewak under § 344.51, STATS. Statutory construction ascribing the same meaning and scope to two separate provisions is disfa-

vored. *United States v. Szwaczka*, 769 F.Supp. 293, 297 (E.D. Wis. 1991). Statutes that address the same subject matter must be read together and harmonized to give each statute full force and effect. *State v. Pernell*, 165 Wis. 2d 651, 656, 478 N.W.2d 297, 299 (Ct. App. 1991).

The offensive construction can be avoided and the statutes harmonized by concluding that the permissive use provision of the omnibus statute applies to insurance companies that issue insurance policies and § 344.51, STATS., applies to vehicle rental agencies, whether they file a bond, insurance policy, or self-insure. This position is in accord with the reasoning in *Classified Ins. Co. v. Budget Rent-A-Car*, 186 Wis. 2d 478, 483, 521 N.W.2d 177 (Ct. App. 1994), which concluded that ch. 344 regulates the owners and operators of motor vehicles who are involved in accidents while ch. 632, STATS., regulates the necessary and permissive provisions of insurance policies. The appellants claim that *Classified* is distinguished in that it dealt with uninsured motorist and not third party liability coverage. They do not, however, demonstrate why the reasoning underlying the court's decision applies differently to one statutory subsection (uninsured motorist, § 632.32(4), STATS.) than its neighbor (permissive use, § 632.32(3), STATS.). If anything, given the policy behind ch. 344 to afford motorist financial protection, the uninsured motorist obligation would be a better candidate for imposition on the self-insured lessor, since ch. 344 provides for a form of permissive use liability, but not an equivalent to uninsured motorist coverage. Thus, we are no better able than the appellants to distinguish the holding in *Classified* and are satisfied that it controls.

Ohio Casualty's policy contains what is commonly referred to as an "other insurance" clause. The contract provides excess coverage to Spiewak when she operates a vehicle she does not own and there is other collectible insurance.[11] The appellants finally contend that, under the holding in *Hillegass v. Landwehr*, 176 Wis. 2d 76, 499 N.W.2d 652 (1993), and Ohio Casualty's "other insurance" clause, Enterprise has primary liability. We agree that *Hillegass* mandates this conclusion.

In *Hillegass*, Burlington Air Express's employee, Bain, and a friend, Landwehr, took a company car on a personal trip. *Id.* at 78, 499 N.W.2d at 653. While Landwehr was driving he collided with Hillegass. *Id.* Burlington self-insured to $1 million with an umbrella for excess liability. *Id.* Landwehr had a liability policy with Farmer's Insurance Exchange, which contained an "other insurance" clause materially identical to Ohio Casualty's. *See id.* The issue was whether Burlington was the primary insurer. *Id.* This turned upon the question of whether "self-insurance" is "insurance" within the meaning of Farmer's "other collectible insurance" clause. *Id.* at 85, 499 N.W.2d at 656.

Our supreme court held that self-insurance can constitute the "other collectible insurance" contemplated by an "other insurance" clause. The court relied on legislative intent and public policy in reaching this result. For example, it considered permitting companies to self-insure and thereby escape both the expense of premiums *and* primary liability to be fundamentally unfair and contrary to legislative intent. Significantly, with regard to the latter, it turned to the language of

---

[11] The Ohio policy states: "[A]ny insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance."

§ 344.30(4), STATS. (self-insurance method of proving financial responsibility), in determining the legislature intended self-insurance to constitute "other collectible insurance."

We conclude that *Hillegass* controls the instant dispute. The court recited and emphasized the following language from § 344.30(4), STATS., 1991–92:

A certificate of self-insurance as provided in s. 344.16, supplemented by an agreement by the self-insurer that, with respect to accidents occurring while the certificate is in force, *the self-insurer will pay the same amounts that an insurer would have been obligated to pay under a motor vehicle liability policy if it had issued such a policy to such self-insurer.* (Emphasis supplied.)

*Id.* at 84, 499 N.W.2d at 656.

Unlike Enterprise, Burlington was not a certified self-insurer under § 344.16, STATS., 1991–92. The court nonetheless found support in § 344.30(4), STATS., 1991–92, for interpreting "other insurance" to embrace self-insurance along with third-party insurance.

We recognize that this section does not specifically apply to the particular situation here [no § 344.16 certification], nevertheless, we find the language of the statute helpful as an expression of legislative intent with respect to self-insurers *generally.* Section 344.30(4) makes explicit our conclusion here that permitting individuals to self-retain risk was not intended by the legislature to be a device by which self-insurers could escape the liabilities that would attach to third-party insurers.

*Id.* at 84–85, 499 N.W.2d at 656 (emphasis added).

We believe that if the *Hillegass* court found the language of § 344.30(4), STATS., 1991–92, instructive

under circumstances where it was not directly applicable, it would find it dispositive where it does apply. Under *Hillegass*, Enterprise is primarily liable to the Boatrights.[12]

In summary, the ch. 344, STATS., statutory scheme applicable to Enterprise imposes on it the obligation to prove and provide financial responsibility. In this case, Enterprise is required to prove its ability to respond in damages in the amount of $25,000. Ohio Casualty's policy provides excess coverage on behalf of Spiewak when she negligently operates another's vehicle and there is other collectible insurance. The self-insurance Enterprise provides is "other collectible insurance" for purposes of the "other insurance" provision in Spiewak's policy. Therefore Enterprise has primary liability for paying any damages awarded to the Boatrights.

[12] The parties agree that the Boatrights' damages exceed Enterprise and Ohio Casualty's combined exposure of $125,000. Thus the issue of primary versus secondary liability appears only relevant to the duty to defend Spiewak. We recognize that, ordinarily, primary liability carries with it the duty to defend. It is likely for this reason that the parties do not brief (*and so we do not address*) the issue whether, under the competing policy interests involved in this case and *Hillegass v. Landwehr*, 176 Wis. 2d 76, 499 N.W.2d 652 (1993), primary liability subsumes the duty to defend. Neither the cases nor the statutes necessarily mandate that the policy to protect persons who are harmed by the negligence of a lessee extends to affording a defense to the lessee who caused the harm. It may be that the exclusive risk the statute requires the rental agency to insure against is the negligent operation of a leased vehicle, not the costs of defense the negligent lessee incurs.

*By the Court.*—Judgment affirmed in part and reversed in part. No costs on appeal.