BRADLEY J. FELLHAUER, Plaintiff-Appellant, v. NICOLE J. ALHORN, Defendant (Enterprise Rent-A-Car Company-Midwest, Garnishee-Appellee).

Fourth District   No. 4—05—0220

Argued August 23, 2005.—Opinion filed October 24, 2005.

MYERSCOUGH, J., dissenting.

Gary L. Cline (argued), of Rammelkamp Bradney, P.C., of Springfield, for appellant.

Robert G. Wuller, Jr., and Matthew C. Zittel (argued), both of Neville, Richards & Wuller, L.L.C., of Belleville, for appellee.

JUSTICE APPLETON delivered the opinion of the court:

Plaintiff, Bradley J. Fellhauer, suffered injuries after being struck on his motorcycle by a vehicle owned by garnishee, Enterprise Rent-A-Car Company-Midwest (Enterprise), and driven by defendant, Nicole J. Alhorn. Fellhauer sued Alhorn for his personal injuries and was awarded a default judgment against her in the amount of $450,000. Fellhauer initiated garnishment proceedings against Enterprise to collect the judgment. In response, Enterprise filed a motion to quash the garnishment summons and discharge it as garnishee. The trial court denied the motion to quash but limited Enterprise's liability to $50,000. Fellhauer appeals the court's decision, claiming Enterprise is liable for the entire judgment amount. We affirm.

## I. BACKGROUND

According to Fellhauer's complaint, on June 29, 2003, he was operating his motorcycle on Morton Avenue in Jacksonville, Illinois. Alhorn, operating a vehicle owned by Enterprise, was proceeding on Morton Avenue in the opposite direction and turned left onto Church Street in the path of Fellhauer's motorcycle, causing him injuries.

On February 20, 2004, Fellhauer filed a complaint against Alhorn, alleging she negligently operated Enterprise's vehicle in such a way as to proximately cause injuries to Fellhauer. Alhorn failed to answer or appear, and on May 24, 2004, Fellhauer obtained a default judgment against her in the amount of $450,000. Alhorn was not insured and had declined coverage with Enterprise at the time she leased the vehicle.

On August 5, 2004, Fellhauer initiated garnishment proceedings against Enterprise. Fellhauer relied on chapter 9 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/9—101 through 9—110 (West 2002))

to support his claim that Enterprise, as lessor of the vehicle, was liable for his injuries caused by Alhorn, the lessee.

On September 3, 2004, Enterprise filed a motion to quash the garnishment summons, claiming garnishment was not the proper procedure for trying to collect the judgment from Enterprise. In the alternative, Enterprise claimed it held $50,000 for Fellhauer's benefit pursuant to the "State of Illinois' Minimum Financial Responsibility laws." Enterprise claimed its liability was limited to $50,000.

On September 20, 2004, Fellhauer filed a memorandum of law in response to Enterprise's motion to quash, arguing garnishment *was* the proper method for collecting on the judgment and, because Enterprise was self-insured, its liability extended beyond the minimum $50,000 policy limits it would have been required to carry had it purchased an insurance policy to cover its losses. Citing section 9—105 of the Vehicle Code (625 ILCS 5/9—105 (West 2002)), Fellhauer argued that nothing in the statute suggested that a rental-car company's financial responsibility was limited to the amount of the policy limits. According to Fellhauer, Enterprise's choice to be self-insured meant it assumed all of the risk of damages caused by its lessees.

On November 8, 2004, Enterprise filed a supplement to its motion to quash, claiming Alhorn's decision not to purchase supplemental insurance from Enterprise effectively nullified Fellhauer's damages in excess of $50,000. Enterprise attached to its supplemental motion to quash a copy of Alhorn's car-rental agreement.

On March 4, 2005, the trial court issued its decision, finding the Vehicle Code "evidences the policy of this State that owners of a rental vehicle carry a minimum amount of liability insurance in one of three ways." Enterprise chose to be self-insured and "by their contract with the renter[,] limited the liability according to the minimum amount as established by the legislature." The court denied Enterprise's motion to quash but found Enterprise's liability was limited to $50,000. The court entered a $50,000 conditional judgment against Enterprise. This appeal followed.

## II. ANALYSIS

The trial court found the statutory sections governing for-rent vehicles (625 ILCS 5/9—101 through 9—110 (West 2002)), when read together, indicated the legislature intended to limit the financial responsibility of self-insured owners of for-rent vehicles to $50,000 to injured third parties. Fellhauer claims the statutes set no limits on liability for self-insured owners.

We are called upon to apply statutes and legal precedent to the undisputed facts. Therefore, our review is *de novo*. *People v. Blair*, 215

Ill. 2d 427, 443, 831 N.E.2d 604, 614 (2005) (appellate courts review a statutory interpretation issue *de novo*).

Fellhauer was awarded $450,000 in damages. Our duty here is to determine whether Enterprise's liability is confined to $50,000 (as the trial court ruled) or whether Enterprise has unlimited exposure to Fellhauer's damages. To make this determination, we must consider chapter 9 of the Vehicle Code in its entirety based on its general purpose and objective. Because chapter 9 does not clearly articulate the legislature's intent with regard to the issue presented here, we must interpret the statute to determine the legislative intent as it relates to the liability and responsibility of self-insurers. In doing so, we are guided by the rules of statutory construction.

"The cardinal rule of statutory construction, to which all other rules and canons are subordinate, is to ascertain and give effect to the true intent of the legislature." *People ex rel. Director of Corrections v. Booth*, 215 Ill. 2d 416, 423, 830 N.E.2d 569, 573 (2005). Reviewing courts should evaluate the statute's provisions as a whole and in relation to other relevant sections. The statutory language must be given its plain, ordinary, and popularly understood meaning. *Booth*, 215 Ill. 2d at 423, 830 N.E.2d at 573.

## A. The Statutes

■ Because the statutory language of chapter 9 is important to this disposition, a brief summary of the individual statutory sections within chapter 9 follows. Section 9—101 of the Vehicle Code (625 ILCS 5/9—101 (West 2002)) requires the owner of for-rent vehicles, like Enterprise, to file proof of financial responsibility with the Illinois Secretary of State (Secretary). Proof of financial responsibility may come in one of three forms: (1) a bond, (2) an insurance policy, or (3) a certificate of self-insurance issued by the Director of the Illinois Department of Insurance. 625 ILCS 5/9—102 (West 2002).

Section 9—103 (625 ILCS 5/9—103 (West 2002)) sets forth the requirements that the owner's bond shall be conditioned that the owner "will pay any judgment within 30 days after it becomes final" entered as a result of injury caused by the rented vehicle. The bond shall be in the penal sum of $100,000 and executed by an authorized surety individual or company. See 625 ILCS 5/9—103 (West 2002).

Section 9—104 governs the procedures of a surety's withdrawal from the bond. Upon the withdrawal, the owner shall file another "bond or insurance policy" in compliance with the provisions of chapter 9. See 625 ILCS 5/9—104 (West 2002).

Section 9—105, which sets forth the requirements for an insurance policy, requires the owners of for-rent vehicles to secure a policy

insuring the operator of the rented motor vehicle against liability for bodily injury in the minimum amount of $50,000 per person and $100,000 per occurrence. The policy must provide that "the insurance carrier will pay any judgment within 30 days after it becomes final" entered as a result of injury caused by the rented vehicle. 625 ILCS 5/9—105 (West 2002).

Section 9—108 requires that any person desiring to engage in the business of renting out motor vehicles must present to the Secretary an application for the approval of the "insurance policy or bond" he or she has obtained as required by section 9—102. Upon approval, the Secretary shall issue a certificate of compliance to the applicant. See 625 ILCS 5/9—108 (West 2002).

Section 9—109 authorizes the Secretary to cancel the certificate of compliance when the owner's "bond or policy" has become inoperative for any reason. See 625 ILCS 5/9—109 (West 2002). Section 9—110 sets forth the penalties for violations of chapter 9. See 625 ILCS 5/9—110 (West 2002).

## B. Self-Insurance Defined

■ "The term 'self-insurance' has no precise legal meaning." 1A Couch on Insurance 3d § 10:1, at 10—2 (1995). The concept has led courts and legislatures to struggle with questions of how to treat parties acting as their own insurer and, in particular, whether self-insurers should be considered the equivalent of an insurer. See 1A Couch on Insurance 3d § 10:2 (1995). An explanation of the purpose and characteristics of self-insurance will be helpful here.

As one New Jersey appellate court found:

"[S]o-called self-insurance is not insurance at all. It is the antithesis of insurance. The essence of an insurance contract is the shifting of the risk of loss from the insured to the insurer. The essence of self-insurance, a term of colloquial currency rather than of precise legal meaning, is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." *American Nurses Ass'n v. Passaic General Hospital*, 192 N.J. Super. 486, 491, 471 A.2d 66, 69 (1984).

This New Jersey court recognized that "within the general, imprecise[,] and amorphous concept of self-insurance there is one type of self-insurance which does have a legally-recognized identity and a clearly defined consequence"—that is, those designated as self-insurers within the context of compulsory liability insurance statutory mandates. *American Nurses*, 192 N.J. Super. at 492, 471 A.2d at 69. "This qualified self-insurance *** has been held to require the self-insurer to provide the public sought to be protected by the compulsory insurance with the same 'coverage' and incidents of 'coverage' as he

would have had to have purchased but for the certificate of self-insurance." *American Nurses*, 192 N.J. Super. at 492, 471 A.2d at 69.

## C. Fellhauer's Argument

Fellhauer claims Enterprise is liable for the entire amount of his damages. He argues that the plain language of chapter 9 does not limit Enterprise's exposure as a self-insurer. The other two financial-responsibility options (a bond and a traditional insurance policy) are governed by statutes that specifically set forth liability limits. Fellhauer claims that since section 7—502 of the Vehicle Code (a section that addresses miscellaneous financial-responsibility provisions) requires a self-insurer to pay "*any* judgment against *any* person," the legislature intended for unlimited exposure for self-insurers. (Emphases added.) 625 ILCS 5/7—502 (West 2002).

If Fellhauer legitimately believed Enterprise's liability was equivalent to Alhorn's, he would or should have sued Enterprise as a codefendant and allowed Enterprise to defend the action. Instead, he chose garnishment, a proceeding where the garnishee holds a fund (namely $50,000) for the benefit of the liable party. Fellhauer's chosen legal maneuver speaks louder than his argument on appeal.

■ Fellhauer's argument results in the invalid proposition that Enterprise bears the same responsibility to Fellhauer as Alhorn. Car-rental agencies are not negligent lessees' alter egos or guarantors. The only nexus between Fellhauer and Enterprise is the financial-responsibility statute, which was enacted for the purpose of protecting the public from negligent drivers of rented vehicles. See *Fogel v. Enterprise Leasing Co. of Chicago*, 353 Ill. App. 3d 165, 176, 817 N.E.2d 1135, 1144 (2004). It was enacted to provide *some*, not necessarily total, protection. See *Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 225, 236, 504 N.E.2d 256, 263 (1987). This purpose of protecting the public does not reflect the proposition that a rental-car company effectively steps into the shoes of its negligent driver upon the driver's rental of one of its vehicles.

## D. Applicable Law

■ In analyzing Fellhauer's claim, we look to the applicable law, including the statutory language, to determine whether self-insurers were intended, within the meaning of the state's financial-responsibility law, to be treated differently than bonded or insured rental-car companies.

> "Whether a self-insured party is considered to be providing 'insurance' depends in large part on (1) the purpose of the analysis, (2) whether the arrangement described as self-insurance is, in real-

ity, an effort by the party to assume insurable risks or merely amounts to a 'deductible,' and (3) whether the entity has made a conscious, calculated decision to estimate its risk and set aside sufficient funds to cover expected losses, or simply and somewhat offhandedly decided to save the cost of purchasing insurance by merely hoping that no losses would occur." 1A Couch on Insurance 3d § 10:2, at 10—2 (1995).

The analysis is driven by the wording of the relevant statutes. 1A Couch on Insurance 3d § 10:3 (1995). Throughout chapter 9, the legislature referred to a "policy or bond," without specific reference to the "certificate" held by self-insurers, when referring to (1) the procedures after a cancellation of an insurance policy (625 ILCS 5/9—106 (West 2002)), (2) a determination that the policy is "not sufficient" (625 ILCS 5/9—107 (West 2002)), (3) the procedures for the Secretary's issuance of a certificate of compliance upon proof of financial responsibility (625 ILCS 5/9—108 (West 2002)), and (4) the procedures for the cancellation of the certificate of compliance (625 ILCS 5/9—109 (West 2002)).

It is unlikely that the legislature intended for self-insurers not to be included or governed by any of the above-cited statutory sections. For example, if a rental-car company's insurance policy or bond became inoperative for any reason, the Secretary would require that company to secure another "policy or bond" (see 625 ILCS 5/9—109 (West 2002)). It is unlikely that the legislature intended to exclude as an option compliance with the requirements of a self-insurer. We find common sense dictates that the legislature did not intend to treat self-insurers differently and expose them to unlimited liability when their counterparts, who chose to be covered by a traditional insurance policy, have only a $50,000 exposure. The choice to be self-insured presumes that the rental company analyzed the risks and rewards of such a decision and, based upon its own financial forecast, chose the certificate as its best option to comply with the financial-responsibility laws of this state.

Illinois courts have not addressed the extent of liability of a self-insured rental-car company; therefore, we looked to other jurisdictions for guidance and found support for our position. See *Boatright v. Spiewak*, 214 Wis. 2d 507, 509-10, 570 N.W.2d 897, 898-99 (1997) (self-insured Enterprise was liable to injured plaintiff only to the amount equivalent to the statutory policy limits required for a rental company which chose to be covered by a policy); *ELRAC, Inc. v. Ward*, 96 N.Y.2d 58, 748 N.E.2d 1, 724 N.Y.S.2d 692 (2001) (state financial-responsibility statutes did not make distinction in terms of liability between a self-insured rental company and a rental company which purchased outside

insurance); *Southern Home Insurance Co. v. Burdette's Leasing Service, Inc.*, 268 S.C. 472, 478, 234 S.E.2d 870, 872 (1977) (a self-insurer provides the same protection to the public that a statutory liability policy provides); *Kiernan v. Agency Rent A Car, Inc.*, 940 F.2d 917, 920 (4th Cir. 1991) (Virginia law mandates that every insurance policy, including those "written" by self-insurers, provide the same level of liability coverage); *McSorley v. Hertz Corp.*, 885 P.2d 1343, 1350 (Okla. 1994) ("self-insurer is allowed to comply with compulsory insurance laws by agreeing to pay the equivalency of the minimum amount required to be carried by all owners of vehicles registered in Oklahoma"); *Li v. Zhang*, 120 P.3d 30, 33 (Utah App. 2005) (self-insured rental company must pay to injured party an amount equivalent to statutory minimum insurance policy limits); *Millers National Insurance Co. v. City of Milwaukee*, 184 Wis. 2d 155, 167, 516 N.W.2d 376, 379 (1994) (the city, as self-insurer, was responsible for the same liabilities that would attach to third-party insurers covering the same risk).

Several states have addressed the issue directly by including language in their respective financial-responsibility statutes that specifies that the self-insurer "will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer." Mo. Ann. Stat. § 303.160(1)(4) (West 2003); see also Wis. Stat. Ann. § 344.30(4) (West 2005); Tex. Transp. Code Ann. § 601.124(c) (Vernon 1999).

■ Based upon the above persuasive authority and our analysis of the statutory language, we find for the purposes of chapter 9 of the Vehicle Code that the legislature intended no distinction between self-insurers and those companies that purchased an outside insurance policy in terms of the companies' liability to injured third parties.

Our decision in this regard is not affected by the authorities relied upon by Justice Myerscough in her dissent. The issue presented in *Hertz Corp. v. Garrott*, 238 Ill. App. 3d 231, 606 N.E.2d 219 (1992), was not the extent of liability Hertz had under its statutory self-insurance certificate, but rather whether a breach of the car-rental contract entitled Hertz to avoid all liability. Likewise, in interpreting New Jersey's similar statutory requirement of financial responsibility for car-rental companies, the court in *Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp., Inc.*, 119 N.J. 402, 413, 575 A.2d 416, 422 (1990), said, in addition to the portion of that case quoted by the dissent:

> "Moreover, with respect to the scope of coverage obligations, it is the well-settled policy of this state to consider a self-insurance certificate as the equivalent of a policy of insurance. [Citation.] We

find no reason to make a distinction between the two forms of insurance coverage—self insurance and a liability policy—based on N.J.S.A. 39:6B—1, with respect to the extent of statutorily-required coverage."

We agree and have no reason to draw such a distinction in Illinois.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

KNECHT, J., concurs.

JUSTICE MYERSCOUGH, dissenting:

I respectfully dissent. The majority correctly recognizes that statutory language must be given its plain, ordinary, and popularly understood meaning. The majority also correctly sets forth the statutory provisions governing bonds and insurance policies for rental-car companies. However, none of these provisions limits a rental-car company's liability to the *minimum* amounts of mandatory insurance. These statutes only set forth the minimum insurance that must be available ($50,000 to $100,000) and the minimum bond required ($600,000). No language in the statutes limits the rental-car owner's liability to those minimums but rather it requires the rental-car company to pay "any judgment within 30 days after it becomes final." 625 ILCS 5/9—103 (West 2002). In fact, failure to timely pay the judgment shall result in cancellation of the certificate of self-insurance.

The majority relies upon its own "common sense" to limit the self-insurer's liability to the statutory minimum of $50,000. This is incorrect, as noted in *Hertz Corp. v. Garrott*, 238 Ill. App. 3d 231, 239, 606 N.E.2d 219, 224 (1992):

"In addition, we find no merit to Hertz's contention that upon a finding that the exculpatory clause is void, its obligation to indemnify third parties is limited to the amounts required by statute for the agency to demonstrate its financial responsibility. Chapter 9 of the Vehicle Code provides that owners of for-rent vehicles, in order to operate their business in the State of Illinois, must demonstrate financial responsibility by (1) posting bond, (2) obtaining insurance, or (3) obtaining a certificate of self insurance. (Ill. Rev. Stat. 1985, ch. 95½, par. 9—101 *et seq.*) At the time of the accident, if a bond was posted, the amount of the required bond was $50,000, if a policy of insurance was obtained, the amount of liability[-]insurance coverage necessary was $50,000. Nevertheless, we find that the statute merely prescribes the *minimum* amounts

needed by a rental agency to conduct business in the State." (Emphasis added.)

This court should not rewrite statutes with its own "common sense." Neither public policy nor statutory language supports the treatment of self-insureds in the same manner as those who pay hefty premiums to assure available insurance to those injured by the rental car. The legislature correctly has recognized a preference for insured vehicles.

Admittedly, the *Hertz* court does go on to recognize the rental-car company's contractual right to limit the scope of the obligation to the mandatory minimum liability limits, just as the trial court did here. However, the *Hertz* court also found an exculpatory clause excluding liability for drunken driving invalid as violative of public policy. Similarly here, permitting Enterprise to contractually limit its liability in the face of statutes requiring payment of "any judgment" would violate those statutes and public policy.

New Jersey recognizes the unlimited nature of liability of the self-insured rental-car companies as set forth in New Jersey's self-insured statutes, which parallel Illinois's statutory provisions:

> "We are aware that the nature of self-insurance, and the advantage for which it is sought, is that it allows a company to carry its own risk of loss and avoid payment of premiums for insurance coverage through a private company. [Citations.]
>
> Unlike a liability policy, however, which is purchased in amounts equal to or greater than the mandatory minimum required by law, *N.J.S.A.* 39:6B—1, a self-insurer does not carry that risk of loss to a specified dollar amount. Rather, there is no explicit limitation on a self-insurer's liability." *Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp.*, 119 N.J. 402, 412, 575 A.2d 416, 421-22 (1990).

The majority references my use of this language out of context. The New Jersey court statement merely reflects on its latter statement, "[m]oreover, with respect to the scope of coverage obligations, it is the well-settled policy of this state to consider a self-insurance certificate as the equivalent of a policy of insurance" (*Ryder*, 119 N.J. at 413, 575 A.2d at 422), and goes on to add a self-insured's liability is not limited to bond or compulsory insurance amounts, "[a] self-insurer's liability for an additional insured during a 'loading or unloading' accident is not limited by its indemnity bond nor by the minimum amounts of compulsory insurance mandated by N.J.S.A. 39:6B—1" (*Ryder*, 119 N.J. at 414, 575 A.2d at 422). The *Ryder* court further stated:

> "With that advantage, however, as *N.J.S.A.* 39:6—52 makes clear, comes the burden of carrying the risk of loss to the extent that a self-insurer's assets are at risk to satisfy any judgments rendered against it." *Ryder*, 119 N.J. at 413, 575 A.2d at 422.

The majority relies upon "common sense" and upon a series of

distinguishable cases from other jurisdictions for guidance. Illinois courts have not addressed the extent of liability of a self-insured rental-car company; therefore, I looked to the other jurisdictions cited by the majority and found the referenced cases distinguishable from the case before us. See *Boatright*, 214 Wis. 2d at 519, 570 N.W.2d at 902, quoting Wis. Stat. § 344.30(4) (1993) (self-insurance statute specifically provided self-insurer will pay " 'the same amounts that an insurer would have been obligated to pay under a motor vehicle liability policy if it had issued such a policy to such self-insurer' "); *Southern Home Insurance Co.*, 268 S.C. at 478, 234 S.E.2d at 872 (self-insurer and liability policy both provide coverage for person using the vehicle with consent); *Kiernan*, 940 F.2d at 920 (Virginia statute states self-insured car-rental company could limit in its rental agreement its uninsured motorist liability to statutory minimum required by state statutes); *McSorley*, 885 P.2d at 1350 (self-insured car-rental company is not required to offer uninsured motorist coverage to a renter, and uninsured coverage not mandated by operation of law); *ELRAC*, 96 N.Y.2d 58, 748 N.E.2d 1, 724 N.Y.S.2d 692 (car-rental company may not seek indemnification from driver for amounts up to statutory minimum liability amounts); *Li*, 120 P.3d at 33 (issue and decision comparable to that of *ELRAC*); *Millers National Insurance Co.*, 184 Wis. 2d at 166, 516 N.W.2d at 379 (the city, as self-insurer, was responsible because of statutes stating that it would be liable for uninsured motorists up to $25,000; however, Illinois statute contains no such dollar amount); *American Nurses*, 192 N.J. Super. at 491, 471 A.2d at 69 (considering whether self-insurance constitutes "other insurance" within meaning of standard other-insurance clause).

For these reasons, I would reverse the trial court's $50,000 award.