# Illinois Official Reports

## Appellate Court

---

### *Nelson v. Artley*, 2014 IL App (1st) 121681

---

| | |
|---|---|
| Appellate Court Caption | DESHAW NELSON, Plaintiff-Appellant, v. DONALD ARTLEY, Defendant (Enterprise Leasing Company of Chicago, Citation Respondent-Appellee). |
| | |
| District & No. | First District, Second Division<br>Docket No. 1-12-1681 |
| | |
| Filed | June 17, 2014 |
| Rehearing denied | July 16, 2014 |
| | |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiff was injured in an accident caused by defendant while driving a car rented by a third person and plaintiff obtained a default judgment for $600,000 against defendant that he attempted to enforce by citation proceedings against the car rental company seeking a turnover order for $600,000 plus interest and costs, the trial court erred when it granted plaintiff's request but limited the amount to $25,000, based on the finding that the rental company's liability under the Illinois Vehicle Code per occurrence for an authorized driver under a rental agreement is $100,000 per occurrence and it had already paid $75,000 for two other persons who were injured, since the Code requires car rental companies to provide proof of financial responsibility in order to rent vehicles, that requirement may be satisfied by filing a bond, an insurance policy or a certificate of self-insurance, a $100,000 limit per occurrence applies to the bond and the insurance policy, but there is no limit on the liability of a car rental company, such as the citation respondent in the instant case, that satisfies the statute by providing a certificate of insurance; therefore, the order limiting the turnover order to $25,000 was reversed and the cause was remanded for the entry of a turnover order in an amount sufficient to satisfy the entire default judgment. |
| | |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-559; the Hon. Alexander P. White, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Robert D. Kuzas and Francis William Golden, both of Robert D. Kuzas, Ltd., of Chicago, for appellant. |
| | Esther Joy Schwartz and Kevin A. Lahm, both of Stellato & Schwartz, Ltd., of Chicago, for appellee. |
| Panel | JUSTICE SIMON delivered the judgment of the court, with opinion. Presiding Justice Harris and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Deshaw Nelson, appeals from an order of the circuit court of Cook County granting his petition for turnover against citation respondent, Enterprise Leasing Company of Chicago (Enterprise), but limiting the amount of the turnover to $25,000. On appeal, plaintiff contends that the court erred because Enterprise is required to pay the entire $600,000 default judgment entered against defendant, Donald Artley, in connection with an accident involving a vehicle owned by Enterprise. Plaintiff also contends that Enterprise is barred by the doctrine of judicial estoppel from claiming that it is only required to pay $25,000 of the default judgment. For the reasons that follow, we reverse and remand.

¶ 2                                  BACKGROUND

¶ 3    This case arises from an April 2007 automobile accident involving plaintiff, Artley, Antoine Ousley, and Renardo Page. The vehicle driven by Artley was owned by Enterprise and rented to Suzanne Haney pursuant to a rental agreement. On January 14, 2010, plaintiff filed a complaint against Artley alleging that Artley committed various negligent acts while operating the vehicle at issue and that those negligent acts were the proximate cause of the accident and the injuries plaintiff suffered as a result of the collision. On May 4, 2010, the circuit court entered a default judgment of $600,000 in favor of plaintiff and against Artley.

¶ 4    On June 18, 2010, plaintiff initiated citation proceedings against Enterprise in connection with the default judgment against Artley. On July 13, 2010, Enterprise filed an answer in which it asserted, *inter alia*, that it bore a total financial responsibility of $100,000 per occurrence for the liability of an authorized driver under the rental agreement, the Illinois Vehicle Code (Code) (625 ILCS 5/1-100 *et seq.* (West 2006)), and the relevant case law and that it was only required to pay plaintiff $25,000 of that total because $75,000 had already been expended in payments to Ousley and Page. Enterprise attached various documents to its answer, including a certificate of self-insurance issued by the Illinois Department of Insurance and a copy of its rental agreement with Haney. Paragraph 7 of the rental agreement is titled "Responsibility to Third Parties" and provides that Enterprise will comply with applicable motor vehicle financial responsibility laws as a self-insured entity and will not extend any

responsibility to the renter, additional authorized drivers, passengers, or third parties except to the minimum amount set forth in the relevant financial responsibility laws.

¶ 5     On September 19, 2011, plaintiff filed a petition against Enterprise for a turnover order for $600,000, plus interest and costs. The petition asserted that Enterprise's financial responsibility was not limited to $100,000 per occurrence and that Enterprise represented in its application for a certificate of self-insurance that it retained a risk of loss for third-party liability claims of up to $2 million per occurrence. Enterprise responded that, pursuant to the decision of the Appellate Court, Fourth District, in *Fellhauer v. Alhorn*, 361 Ill. App. 3d 792 (2005), the financial responsibility of a self-insured rental car company such as Enterprise was limited to $100,000 per occurrence and that if the Code imposed full liability on rental car companies for judgments against the drivers of their vehicles, the Code would be preempted by federal law.

¶ 6     On May 10, 2012, the court entered an order in which it granted plaintiff's petition, but limited the turnover amount to $25,000. In doing so, the court determined that it was required to follow the *Fellhauer* decision, under which Enterprise's financial responsibility was limited to $100,000 per occurrence. Plaintiff now appeals from that order.

¶ 7                                         ANALYSIS

¶ 8     Plaintiff contends that Enterprise is required by the Code to pay the entire $600,000 default judgment entered against Artley and that this court should not follow the Fourth District's decision in *Fellhauer* because that case is wrongly decided. Enterprise responds that this court should adopt the holding in *Fellhauer* because the Code provides that the minimum financial responsibility of a self-insured rental car company for its vehicles is $100,000 per occurrence.

¶ 9     Section 9-101 of the Code provides that an entity may only engage in the business of renting out its vehicles if it first provides the Illinois Secretary of State with proof of its financial responsibility. 625 ILCS 5/9-101 (West 2006). The purpose behind the financial responsibility requirements is to provide the public with protection from negligent drivers of rental vehicles who are without insurance. *Fogel v. Enterprise Leasing Co. of Chicago*, 353 Ill. App. 3d 165, 176 (2004); *Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 225, 232 (1987). While chapter 9 only sets forth minimum requirements of financial responsibility, and does not limit a company's responsibility in connection with an accident involving one of its vehicles, this court has held that a company may contractually limit its financial responsibility in its rental agreements to the amount necessary to satisfy the minimum requirements. *Fogel*, 353 Ill. App. 3d at 176; *Farm Bureau Mutual Insurance Co. v. Alamo Rent A Car, Inc.*, 319 Ill. App. 3d 382, 389 (2000); *Hertz Corp. v. Garrott*, 238 Ill. App. 3d 231, 239 (1992).

¶ 10    In this case, paragraph 7 of the rental agreement provides that Enterprise's financial responsibility to third parties is limited "to the applicable state minimum financial responsibility amounts." As Enterprise is a self-insured entity, we must interpret the Code and determine the minimum financial responsibility of a self-insured rental car company to ascertain what portion of the default judgment Enterprise is required to pay. Accordingly, this case presents a question of statutory construction and our review is *de novo*. *JPMorgan Chase Bank, N.A. v. Earth Foods, Inc.*, 238 Ill. 2d 455, 461 (2010).

¶ 11    A court's primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. *Ready v. United/Goedecke Services, Inc.*, 232 Ill. 2d 369, 375 (2008). The first step in determining legislative intent is to examine the language of the statute, and when the language is clear and unambiguous, the statute must be given its plain meaning without resort to further aids of statutory construction. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008).

¶ 12    Section 9-102 of the Code provides that a rental car company may give proof of financial responsibility by filing a bond, an insurance policy, or a certificate of self-insurance issued by the Director of the Department of Insurance. 625 ILCS 5/9-102 (West 2006). A bond must be in the sum of $100,000 and conditioned on the rental car company's payment of any judgment resulting from the operation of a rental vehicle against the company, the renter, or anyone driving the car with the consent of the company and the renter. 625 ILCS 5/9-103 (West 2006). An insurance policy must provide that the insurance carrier will pay any judgment against the renter or anyone operating the rental vehicle with the renter's consent resulting from the operation of the vehicle in the minimum amount of $50,000 for an accident involving one other person and $100,000 for an accident involving more than one other person. 625 ILCS 5/9-105 (West 2006).

¶ 13    While chapter 9 does not set forth any requirements for proof of financial responsibility by certificate of self-insurance, such requirements are provided in section 7-502 of the Code. See 92 Ill. Adm. Code 1090.10, amended at 6 Ill. Reg. 12674 (eff. Apr. 26, 1973) ("Proof of financial responsibility required by Sec. 9-101 of The Illinois Vehicle Code (I.V.C.) may also be given by filing a certificate of self-insurance issued under Sec. 7-502 of The I.V.C."). Pursuant to section 7-502, "[a]ny person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Director of the Department of Insurance." 625 ILCS 5/7-502 (West 2006). The Director may issue a certificate of self-insurance if "such person is possessed and will continue to be possessed of ability to pay judgment obtained against such person" and may cancel a certificate if that person fails to pay a judgment against any person covered by the certificate and arising out of any accident in which a vehicle covered by the certificate is involved within 30 days of judgment. *Id.* "Judgment" is defined as a final judgment "against a person as defendant for damages on account of bodily injury to or death of any person or damages to property resulting from the operation of any motor vehicle." 625 ILCS 5/7-100 (West 2006).

¶ 14    As such, the plain language of section 7-502 provides that a certificate of self-insurance may be issued to an entity that has shown the ability to pay any judgments obtained against itself as a defendant for damages and that the entity must pay all such judgments in a timely manner in order to retain its certificate. In this case, no judgment has been entered against Enterprise as a defendant for damages. Accordingly, Enterprise is not required by the plain language of section 7-502 to pay any portion of the default judgment entered against Artley.

¶ 15    However, a court presumes that the legislature did not intend absurdity, inconvenience, or injustice (*Sandholm v. Kuecker*, 2012 IL 111443, ¶ 41) and is not bound by the specific language of a statute if it will produce a result that is inconsistent with legislative intent or yields absurd or unjust consequences (*In re D.F.*, 208 Ill. 2d 223, 230 (2003)). To hold that self-insured rental car companies are not required to pay any portion of a judgment against the drivers of their vehicles would result in absurdity, as those companies with the financial

wherewithal to qualify for self-insurance would not bear any responsibility for such judgments while other companies would be required to assume the financial burden of maintaining a bond or insurance policy. Also, such a holding would be inconsistent with the legislative intent of protecting the public from uninsured and negligent drivers of rental vehicles because the public would not receive any protection from uninsured and negligent drivers of vehicles rented from self-insured companies. Further, Enterprise does not maintain that it is not required to pay any portion of the default judgment and expressly waived any such claim in its response to plaintiff's petition for a turnover order. Thus, this court is not bound by the specific language of section 7-502, as adherence to the plain language of that provision would yield an absurd result that is contrary to legislative intent.

¶ 16    "When the meaning of a statute is not clearly expressed in the statutory language, a court may look beyond the language employed and consider the purpose behind the law ***." *Petersen v. Wallach*, 198 Ill. 2d 439, 444-45 (2002). In construing a statutory provision, a court must read the statute as a whole and consider words and phrases in light of other relevant provisions in the statute. *In re Detention of Stanbridge*, 2012 IL 112337, ¶ 70.

¶ 17    In general, all motor vehicles operated or registered in Illinois must be covered by a liability insurance policy (625 ILCS 5/7-601(a) (West 2006)), and that policy must provide a minimum amount of coverage of $20,000 for injuries or death to one person and $40,000 for injuries or death to more than one person (625 ILCS 5/7-203 (West 2006)). *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 56-57 (2011). To that extent, the owner of a vehicle shall not permit another person to operate, register, or maintain registration of the vehicle unless it is covered by a liability insurance policy that meets the relevant minimum financial requirements. 625 ILCS 5/7-601(a) (West 2006). "The principal purpose of the mandatory liability insurance requirement is to protect the public by ensuring adequate compensation for damages and injuries sustained in motor vehicle accidents." *Country Preferred Insurance Co. v. Whitehead*, 2012 IL 113365, ¶ 30. However, certain vehicle owners are exempt from that requirement, including owners of vehicles which are covered by a certificate of self-insurance issued under section 7-502, or which comply with laws requiring insurance in amounts meeting or exceeding the minimums of $20,000 and $40,000. 625 ILCS 5/7-601(b)(3), (b)(6) (West 2006).

¶ 18    Thus, under the general mandatory liability insurance requirements, an entity which is capable of qualifying as a self-insurer has the option of either maintaining liability insurance policies for its vehicles which meet the minimum statutory amounts of $20,000 and $40,000 or obtaining a certificate of self-insurance. If the entity chooses self-insurance, it is then required to pay all judgments entered against itself pursuant to the plain language of section 7-502. Under chapter 9, a rental car company may prove its financial responsibility by either maintaining bonds or insurance policies which meet the minimum statutory amount of $100,000 per occurrence, as set forth in sections 9-103 and 9-105, or by obtaining a certificate of self-insurance pursuant to the requirements set forth in section 7-502. Therefore, under both the general mandatory liability insurance requirements and the rental car company financial responsibility requirements, the owner of a vehicle must provide the public with a minimum level of protection against uninsured drivers by obtaining insurance policies or, for rental car companies, bonds for its vehicles unless the owner has sufficient resources to qualify as a self-insurer and avails itself of that additional option.

¶ 19     Based on this statutory scheme, we see no reason to treat rental car companies differently than any other self-insured entity. Just as an entity which exempts itself from the insurance requirement of section 7-601(a) by obtaining a certificate of self-insurance must assume the risk of having to pay all judgments entered against itself under section 7-502, a rental car company which chooses to prove its financial responsibility by a certificate of self-insurance instead of a bond or insurance policy should assume a similar risk. If a rental car company does not want to assume that risk, it may meet its financial responsibility obligations through bonds or insurance policies that comply with the minimum requirements in sections 9-103 and 9-105. Accordingly, we conclude that a self-insured rental car company's minimum responsibility to pay judgments is not limited to $100,000 per occurrence or any other amount.

¶ 20     In addition, by holding that a self-insured rental car company's financial responsibility is not limited to $100,000, we are interpreting the statute in a manner which is consistent with the underlying legislative purpose that the financial responsibility requirements are meant to provide the public with protection from negligent drivers of rental vehicles who are without insurance. *Fogel*, 353 Ill. App. 3d at 176; *Insurance Car Rentals*, 152 Ill. App. 3d at 232. Brushing aside the policy of protecting the public, Enterprise maintains that limiting a self-insured rental car company's financial responsibility to $100,000 favors public policy because it creates savings which can be passed on to consumers by providing companies with risk-certainty and allowing them to avoid the cost of purchasing bonds or insurance policies. However, as set forth in the financial statements tendered to the Director, Enterprise "retained the risk of loss up to $2 million on a per occurrence basis" for third-party automobile liability and, while not mentioned in the briefs, that Enterprise was insured up to $250 million. Thus, there is nothing which shows that any proposed savings would be passed to the consumers or, rather, whether those savings would simply be retained by Enterprise.

¶ 21     In sorting out these colliding thoughts, we refuse to abandon the policy behind the financial responsibility requirements designed to protect the public from uninsured drivers of rental vehicles rather than protect rental car companies or their customers from higher costs or prices. By specifying minimum amounts of financial responsibility for bonds and insurance policies, but declining to do so for self-insured companies, the legislature requires a minimum level of protection for the public of $100,000 per occurrence while allowing for greater protection in the event rental car companies that are financially able to do so choose self-insurance. To the extent Enterprise claims that limiting a self-insured rental car company's financial responsibility to $100,000 per occurrence would benefit society at large by making the rental car business more efficient and reducing the prices for rental car customers, such a balancing of interests is to be undertaken by the legislature, and not this court. In this case, it appears from a consideration of the Code as a whole that the legislature has chosen to prioritize protecting the public from uninsured drivers of rental vehicles without any mention of reducing the price of renting a car.

¶ 22     In reaching this conclusion, we have considered the Fourth District's *Fellhauer* decision, but are not persuaded by the reasoning set forth therein. In *Fellhauer*, 361 Ill. App. 3d at 793, the plaintiff obtained a $450,000 default judgment against the defendant on the basis of a negligence claim arising from an automobile accident in which the uninsured defendant was driving a vehicle rented from Enterprise. The court rejected the plaintiff's claim that Enterprise was required to pay the entire default judgment pursuant to section 7-502 and stated that a rental car company was not a negligent lessee's alter ego or guarantor and that the only

connection between the plaintiff and Enterprise was the financial responsibility statute, which was enacted to provide the public with some, but not necessarily total, protection from uninsured drivers of rental cars. *Id.* at 797. The court stated that it was unlikely that the legislature intended for self-insurers not to be governed by the provisions of chapter 9 and concluded that Enterprise was only required to pay $50,000 of the default judgment because "common sense dictates that the legislature did not intend to treat self-insurers differently and expose them to unlimited liability when their counterparts, who chose to be covered by a traditional insurance policy, have only a $50,000 exposure." *Id.* at 798. In doing so, the court looked to other jurisdictions for guidance and found its approach to be consistent with that taken by other states, some of which included language in their respective financial responsibility statutes specifying that a self-insurer will pay judgments in the same amount as a traditional insurer. *Id.* at 798-99.

¶ 23    To the extent the court in *Fellhauer* decided that section 7-502 of the Code did not apply because a self-insured rental car company's financial responsibility requirements were governed by chapter 9, we disagree. Section 9-102 provides that a rental car company may give proof of its financial responsibility by filing "[a] certificate of self insurance issued by the Director." 625 ILCS 5/9-102 (West 2006). Section 7-502 directs that the requirements for obtaining a certificate of self-insurance issued by the Director of the Department of Insurance are provided therein. 625 ILCS 5/7-502 (West 2006). In addition, the Illinois Administrative Code provides that "[p]roof of financial responsibility required by Sec. 9-101 of The Illinois Vehicle Code (I.V.C.) may also be given by filing a certificate of self-insurance issued under Sec. 7-502 of The I.V.C." 92 Ill. Adm. Code 1090.10, amended at 6 Ill. Reg. 12674 (eff. Apr. 26, 1973). Thus, the requirements for the issuance and maintenance of a certificate of self-insurance sufficient to prove a rental car company's financial responsibility under section 9-102 are governed by section 7-502.

¶ 24    Because a self-insured rental car company's financial responsibility requirements are not set forth in their entirety in chapter 9 of the Code, it is necessary to consider the Code as a whole to determine the manner in which section 7-502 operates with regard to rental car companies. The *Fellhauer* court only looked at chapter 9 and, while disregarding section 7-502 and relying on its "common sense" as authority, determined that a self-insured rental car company should only be required to provide the same level of coverage as would be required of an insurance policy. However, contrary to the *Fellhauer* court's reliance on common sense, an examination of the operation of section 7-502 with regard to entities that are not rental car companies evidences that the legislature intended to require self-insured entities to provide coverage beyond the specific statutory minimums set forth elsewhere in the Code. The Code, when considered as a whole, provides that a self-insured rental car company is treated the same as any other self-insured entity with regard to the Code's financial responsibility requirements.

¶ 25    Although the *Fellhauer* court found its approach to be consistent with that taken in other jurisdictions, our review does not reveal a clear consensus as to whether a self-insured rental car company's financial responsibility is limited to the same minimum amounts as those required of an insurance policy. To the extent the *Fellhauer* court cited to statutory provisions from other states which specify that a self-insurer " 'will pay the same judgments and in the same amounts that an insurer would have been obligated to pay under an owner's motor vehicle liability policy if it had issued such a policy to said self-insurer' " (*Fellhauer*, 361 Ill. App. 3d at 799 (quoting Mo. Ann. Stat. § 303.160(1)(4) (West 2003), and citing Wis. Stat.

- 7 -

Ann. § 344.30(4) (West 2006), and Tex. Transp. Code Ann. § 601.124(c) (Vernon 1999))), the Illinois legislature could have included such language in the Code, but did not. Thus, cases which rely upon those statutes (*Boatright v. Spiewak*, 570 N.W.2d 897 (Wis. Ct. App. 1997); *Millers National Insurance Co. v. City of Milwaukee*, 516 N.W.2d 376 (Wis. 1994)) or other statutes with similar provisions (*Li v. Zhang*, 2005 UT App 246, ¶¶ 10-12, 120 P.3d 30; *Kiernan v. Agency Rent A Car, Inc.*, 940 F.2d 917, 919-20 (4th Cir. 1991)) are of diminished persuasive value. While two decisions cited by the *Fellhauer* court found the minimum financial responsibility requirements of a self-insured to be the same as the minimum requirements for an insurance policy (*McSorley v. Hertz Corp.*, 885 P.2d 1343, 1350 (Okla. 1994); *Southern Home Insurance Co. v. Burdette's Leasing Service, Inc.*, 234 S.E.2d 870, 872 (S.C. 1977)), another case only mentioned the extent of a self-insured's responsibility in the context of holding that a self-insured must comply with the relevant statutory minimum requirements (*ELRAC, Inc. v. Ward*, 748 N.E.2d 1 (N.Y. 2001)). The issue in this case is not whether Enterprise must comply with the statutory financial requirements, but how much of the judgment it must pay to meet its obligations. In answer to that question, courts in New Jersey (*Ryder/P.I.E. Nationwide, Inc. v. Harbor Bay Corp.*, 575 A.2d 416, 421-22 (N.J. 1990)) and Michigan (*Enterprise Leasing Co. of Detroit v. Sako*, 590 N.W.2d 617, 618-19 (Mich. Ct. App. 1998)) have held that a self-insured's responsibility is not limited to a specific dollar amount.

¶ 26    Enterprise cites to another case from New York, *Guercio v. Hertz Corp.*, 358 N.E.2d 261 (N.Y. 1976), for the proposition that a judgment against the driver of a rental vehicle is different from a judgment against the rental car company itself. That proposition, however, only supports our earlier determination that the plain language of section 7-502 does not require Enterprise to pay any portion of the judgment against Artley and that we must then consider section 7-502 in light of other provisions in the Code and the purpose behind the law. Further, the court's statement that "self-insurance is not insurance but an assurance–an assurance that judgments will be paid," supports our conclusion that self-insured entities do not share the same minimum financial responsibility amounts as insurance carriers.

¶ 27    Thus, while it is clear that some jurisdictions have limited the financial responsibility of a self-insured rental car company to the same minimum amounts as are required of an insurance policy, some states have done so by setting clear limitations in the relevant statutes and others have not set any limits at all. Decisions from other jurisdictions are not binding on this court (*In re Hannah E.*, 372 Ill. App. 3d 251, 258 (2007)), and we do not find the interpretation of foreign statutes in the above-cited authorities to be sufficiently compelling to overcome our conclusion that the Code does not limit a self-insured rental car company's financial responsibility to the same minimum amounts that are required of an insurance policy.

¶ 28    Enterprise also asserts that the *Fellhauer* decision is supported by legislative history and cites to portions of Senate discussions regarding two amendments to the Code which, Enterprise maintains, indicate that the legislature did not intend to impose different financial responsibility requirements for self-insured rental car companies and insurance policies. We now address the legislative history cited by Enterprise, as it may be an aid in interpreting an ambiguous statute. *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 398 (2003).

¶ 29    While discussing a bill to amend the Code to increase the insurance requirement for leasing companies and taxicab firms to $50,000 per claim, Senator Course stated that most such

companies already provided insurance coverage of $50,000 and that "[t]here are 46 companies that are self-insured and the majority of them have $50,000 coverage right now." 77th Ill. Gen. Assem., Senate Proceedings, June 21, 1972, at 92 (statements of Senator Course). Although Enterprise claims that this passage shows that the legislature did not object to allowing a self-insured company to limit its potential liability, the statement of Senator Course merely articulates his belief that it would be fair to increase the minimum insurance requirement for leasing companies and taxicab firms to a level which most self-insured companies were already able to cover.

¶ 30    Senator Berman, while discussing a bill to change the type of insurance a rental car company could sell to a customer, asked if he was correct in understanding that "as it applies to liability coverage, Rent-A-Cars-short-term rentals are still at 50/100 on liability coverage," and Senator Berkhausen responded that he was correct. 86th Ill. Gen. Assem., Senate Proceedings, June 30, 1989, at 79-80 (statements of Senator Berman and Senator Berkhausen). While this exchange shows that the senators believed that rental car companies were required to maintain liability coverage in the minimum amounts of $50,000 and $100,000, as provided in section 9-105, nothing indicates whether the senators believed those minimums only applied to coverage through an insurance policy or applied to self-insured entities as well.

¶ 31    As Enterprise admits in its brief, the statements contained in the cited legislative history are not fully responsive to the issues in this case. Thus, the limited and inconclusive legislative history cited by Enterprise is not sufficiently compelling to alter our conclusion that the Code does not limit a self-insured rental car company's financial responsibility to the same minimum amount required of an insurance policy.

¶ 32    Enterprise further asserts that a self-insured rental car company's financial responsibility must be limited to $100,000 per occurrence because the Code would otherwise be preempted by the Graves Amendment of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users, a federal law. See 49 U.S.C. § 30106 (2006). Federal law preempts state law when a state action actually conflicts with federal law. *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 39-40 (2010).

¶ 33    The Graves Amendment provides that a rental car company may not be held liable for harm to persons or property arising from the use, operation, or possession of one of its rental vehicles if there is no negligence or criminal wrongdoing on the part of the company. 49 U.S.C. § 30106(a) (2006). The Graves Amendment also provides that it does not supersede any state laws "imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle." 49 U.S.C. § 30106(b)(1) (2006). Various courts have held that the Graves Amendment preempts vicarious liability laws against rental car companies. *Garcia v. Vanguard Car Rental USA, Inc.*, 540 F.3d 1242, 1249 (11th Cir. 2008); *Green v. Toyota Motor CreditCorp*, 605 F. Supp. 2d 430, 436 (E.D.N.Y. 2009); *Meyer v. Nwokedi*, 759 N.W.2d 426, 430 (Minn. Ct. App. 2009).

¶ 34    Enterprise maintains that if the Code requires a self-insured rental car company to pay all judgments entered against the drivers of its vehicles, then the Code essentially imposes vicarious liability on self-insured rental car companies and is preempted by the Graves Amendment. In this case, we are not holding that Enterprise is vicariously liable for Artley's actions, but only that it bears the responsibility to pay the default judgment against Artley because it has chosen to comply with the financial responsibility requirements in chapter 9 of

the Code by obtaining a certificate of self-insurance. If Enterprise wants to avoid the risks associated with self-insurance, it can choose to meet its financial responsibility obligations through bonds or insurance policies. Thus, the Code does not impose any liability on a rental car company by reason of its ownership of its vehicles and only imposes financial responsibility requirements with which the company may choose to comply by filing a bond, insurance policy, or certificate of self-insurance. Based on the foregoing and the Graves Amendment's guarantee that it does not supersede any state laws "imposing financial responsibility or insurance standards on the owner of a motor vehicle" (49 U.S.C. § 30106(b)(1) (2006)), we find that the Graves Amendment is not applicable and does not preempt the Code.

¶ 35    We also note that although Enterprise maintains that this court's interpretation of the Code will expose self-insured rental car companies to full indemnification of all drivers of their vehicles regardless of their relationship with the drivers, or lack thereof, such an outcome is not mandated by the Code. As section 7-601(a) only provides that a vehicle owner shall not permit another person to operate an automobile that is not covered by a liability insurance policy (625 ILCS 5/7-601(a) (West 2006)), an owner would not be in violation of that provision if the vehicle was used without the owner's permission, such as if the car was stolen. Similarly, section 9-103 only requires that a bond be conditioned on the payment of a judgment against the company, the renter, or a person driving the car with the consent of the company and the renter (625 ILCS 5/9-103 (West 2006)) and section 9-105 only requires that an insurance policy must provide that the insurance carrier will pay a judgment against the company, the renter, or a person driving the car with the consent of the renter (625 ILCS 5/9-105 (West 2006)). Thus, while a company may not evade its statutory financial responsibility obligations through contract (*Garrott*, 238 Ill. App. 3d at 238), the Code does not extend a rental car company's financial obligations to all drivers of its vehicles. In this case, Enterprise stated in its answer to plaintiff's citation to discover assets that it was not required to pay any portion of the default judgment because Artley may have stolen the vehicle at issue but then expressly waived that claim in its response to plaintiff's petition for a turnover order. Also, there is no evidence in the record showing that the car was stolen and, as such, the possible theft of the vehicle by Artley is not at issue.

¶ 36                                        CONCLUSION

¶ 37    For the foregoing reasons, we reverse the order limiting the turnover amount to $25,000 and remand the matter to the circuit court for the entry of a turnover order in favor of plaintiff in an amount sufficient to cover the entire default judgment entered against Artley. Having concluded that Enterprise is required by the Code to pay the entire default judgment, we need not consider plaintiff's additional claim that Enterprise is barred by the doctrine of judicial estoppel from claiming that it is only required to pay $25,000. We also note that while we reverse the order of the circuit court, we are not criticizing the circuit court's decision, as it was required to follow the *Fellhauer* decision at the time it entered its order. *Delgado v. Board of Election Commissioners*, 224 Ill. 2d 481, 488 (2007).

¶ 38    Reversed and remanded.