# Illinois Official Reports

## Appellate Court

*Safeway Insurance Co. v. Hadary*, 2014 IL App (1st) 132554

| | |
|---|---|
| Appellate Court Caption | SAFEWAY INSURANCE COMPANY, Plaintiff and Counterdefendant-Appellee, v. JEFFREY HADARY AND STEPHANIE HADARY, Defendants and Counterplaintiffs-Appellants (Hertz Corporation, Defendant and Counterplaintiff). |
| District & No. | First District, First Division Docket No. 1-13-2554 |
| Filed | November 3, 2014 |
| Rehearing denied | December 1, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from an automobile accident between a vehicle owned by defendants and insured by plaintiff with a policy including underinsured motorist coverage, and a vehicle rented by a driver who declined to purchase supplemental insurance from the rental company and relied on his own insurance, which provided the minimum coverage required by Illinois law, the trial court erred in entering partial summary judgment for plaintiff and concluding that plaintiff was not required to pay pursuant to the underinsured motorist clause of its policy after defendants collected the limits under the renter's policy until the car rental company had exhausted the limits of the financial responsibility statute applicable to such companies, since allowing the car rental company's liability under the financial responsibility statute to be triggered before the underinsured motorist coverage in the policy issued by plaintiff and paid for by defendants came into play would result in a situation where the insureds would receive more benefits in the fortuitous event of being injured by a rental car than a car not owned by a rental company, something the legislature could not have intended. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-18141; the Hon. Neil H. Cohen, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed in part and affirmed in part. |
| Counsel on Appeal | James E. Ocasek, of Cooney & Conway, of Chicago, for appellants. |
| | Keely Hillison, of Parrillo, Weiss & O'Halloran, of Chicago, for appellee. |
| Panel | JUSTICE CONNORS delivered the judgment of the court, with opinion. |
| | Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion. |

**OPINION**

¶ 1    Defendants Jeffrey Hadary and Stephanie Hadary (the Hadarys) appeal the granting of partial summary judgment in favor of plaintiff, Safeway Insurance Company (Safeway). Hertz Corporation (Hertz) is not a party to the appeal.

¶ 2                                I. BACKGROUND

¶ 3    We set out those facts relevant to the instant appeal. On April 7, 2010 the Hadarys were involved in an automobile accident with a vehicle owned by Hertz and driven by Carlos Velez (Velez). At the time of the accident, both the Hadarys and Velez had insurance. The Hadarys had an automobile insurance policy through Safeway. That policy included, for a premium of $57 as stated on the declaration page of the policy, underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence. When he rented the Hertz car, Velez declined Hertz's liability insurance supplement (LIS) and instead chose to rely on his own insurance policy through American Access Casualty Company (American Access), which had limits of $20,000 per person or $40,000 per occurrence.[1] At the time of the accident, Hertz was in compliance with the statute requiring proof of financial responsibility (625 ILCS 5/9-105 (West 2008)) and was therefore authorized to do business in the state of Illinois. The financial responsibility statute requires the rental car company to insure "the operator of the rented motor vehicle against liability upon such insured to a minimum amount of $50,000 because of bodily injury to, or death of any one person or damage to property and $100,000 because of bodily injury to or death of 2 or more persons in any one motor vehicle accident." *Id.* A rental company can achieve compliance with this statutory requirement by filing a bond, an insurance policy, or certificate of self-insurance. 625 ILCS 5/9-102 (West 2008). There is no

_____

[1]For most vehicles, the Illinois Vehicle Code requires that the policy limits must be at least $20,000 per person or $40,000 per accident for personal injury or death. 625 ILCS 5/7-601(a), 7-203 (West 2008).

information in the record about which method Hertz relied on to comply with the statutory requirement.

¶ 4    As a result of the accident, the Hadarys recovered $40,000, or the policy limits, from Velez's insurer. Because that amount did not cover the Hadarys' injuries and because they had paid for underinsured motorist coverage, the Hadarys claimed underinsured motorist coverage and demanded arbitration of their claims pursuant to their policy with Safeway. The relevant provision of that policy, "Part III: Underinsured Motorists Coverage," obligated Safeway to pay all sums the Hadarys were legally entitled to recover

> "because of bodily injury including death resulting therefrom *** sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such underinsured motor vehicle, provided for the purposes of this coverage, determination of whether the insured or such representative is legally entitled to recover such damages and if so the amount thereof, shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration."

¶ 5    But the same provision in Part III qualifies Safeway's obligation to pay its insureds: "[Safeway] shall not be obligated to pay under this coverage until after the limits of liability under all applicable bodily injury bonds or policies or other applicable security have been exhausted by payment of judgments or settlements." The parties refer to this qualification on Safeway's obligation to pay as the "exhaustion clause."

¶ 6    After several months during which Safeway and the Hadarys or their attorneys exchanged letters about the underinsured motorist claim, Safeway filed this declaratory judgment against both the Hadarys and Hertz. Safeway's complaint asked the court to declare that its policy with the Hadarys did not provide coverage for the underinsured motorist claims and that Safeway was not obligated to pay, settle, or arbitrate the underinsured motorist claims. The Hadarys filed a counterclaim asserting breach of insurance contract based on Safeway's failure to arbitrate their underinsured motorist claims and for unreasonable and vexatious conduct based on Safeway's handling of the Hadarys' claims. Hertz also filed a counterclaim against Safeway, a counterclaim against the Hadarys, and a third-party claim against Velez. In relevant part, Hertz requested that the court declare that it did not provide liability insurance for the accident.

¶ 7    The Hadarys and Safeway then filed cross-motions for summary judgment. In their motion for summary judgment, the Hadarys argued that Hertz did not provide liability coverage in this matter because it offered primary insurance and Velez declined to purchase it. In so declining, Velez and Hertz agreed, as stated in the rental agreement, that "any insurance that provides coverage to You or to an Authorized Operator shall be primary. In the event of any claims arising from the operation of the Car, such insurance shall be responsible for the payment of all personal injury and/or property damage claims up to the limits of such insurance." Furthermore, because Velez declined primary insurance through Hertz, a second provision of the policy was triggered, stating:

> "YOUR INSURANCE AND THE INSURANCE OF THE OPERATOR OF THE CAR WILL BE PRIMARY. THIS MEANS THAT HERTZ WILL NOT GRANT ANY DEFENSE OR INDEMNITY PROTECTION UNDER THIS PARAGRAPH IF EITHER YOU OR THE OPERATOR OF THE CAR ARE COVERED BY ANY VALID AND COLLECTIBLE AUTOMOBILE LIABILITY INSURANCE,

WHETHER PRIMARY, EXCESS OR CONTINGENT, WITH LIMITS AT LEAST EQUAL TO THE MINIMUM REQUIRED BY THE APPLICABLE STATE FINANCIAL RESPONSIBILITY LAW."

¶ 8    The Hadarys argued that based on these two provisions of the Hertz agreement, they exhausted all applicable coverage as required under the Safeway underinsured motorist provision and, therefore, Safeway had an obligation to arbitrate their claims. The Hadarys also argued that Safeway's failure to resolve their underinsured motorist claim amounted to unreasonable and vexatious conduct in violation of the Illinois Insurance Code (215 ILCS 5/155(1) (West 2008)) for which the court could assess reasonable attorney fees as part of the taxable costs of the action.

¶ 9    Safeway's cross-motion for summary judgment argued that both Velez's personal policy and Hertz's liability as owner of the rented vehicle must be exhausted before Safeway's underinsured motorist coverage is triggered and that Hertz is not absolved of liability when its customer's personal policy is less than the statutorily required minimum for owners of rental vehicles under the financial responsibility statute (625 ILCS 5/9-105 (West 2008)). Furthermore, Safeway contended that its conduct was not vexatious and unreasonable under the Illinois Insurance Code because there was a *bona fide* issue of coverage in this case.

¶ 10    The trial court granted partial summary judgment in favor of Safeway and against the Hadarys, concluding that Safeway was not obligated to pay pursuant to the underinsured motorist coverage of the Safeway policy until the limits of Hertz's financial responsibility liability had been exhausted. The court reasoned that "nothing in the rental agreement unambiguously disclaim[ed] Hertz's responsibility to provide secondary coverage in the event that the primary coverage is insufficient to compensate an injured third party," and even if Hertz had disclaimed responsibility to provide coverage in the event primary coverage was insufficient, such a disclaimer would violate the public policy requiring rental car companies to provide an amount of insurance that exceeds the amount required of people purchasing automobile insurance. The trial court denied the Hadarys' motion for summary judgment, which had requested that the court declare Hertz free of liability and that the Hadarys had exhausted all applicable coverage such that the underinsured motorist provision provided coverage for their claims.

¶ 11    The trial court granted summary judgment to Safeway on the Hadarys' two-count counterclaim, reasoning that Safeway had a *bona fide* reason to deny the underinsured motorist claim. The court also granted summary judgment to Safeway on Hertz's counterclaim. Finally, the trial court found that Safeway was not estopped nor did it waive any policy defense to the Hadarys' claims because, based on the correspondence in the record, Safeway tried to determine Hertz's obligations, and any steps Safeway took toward arbitration of the underinsured motorist claims were expressly taken without waiving any objections to coverage.

¶ 12    In their joint motion to reconsider, the Hadarys and Hertz contended that Hertz "unambiguously disclaim[ed] responsibility to provide secondary coverage in the event that the primary coverage [was] insufficient to compensate an injured third party" based on the rental agreement that identified the driver's insurance as primary and disclaimed any responsibility to provide a defense if the driver is covered by "any valid and collectible automobile liability insurance, whether primary, excess or contingent." The trial court denied the joint motion to reconsider.

¶ 13    On the Hadarys' motion, the trial court made an express written finding that there was no just reason for delaying the appeal. Ill. S. Ct. R. 304(a) (eff. Feb. 26, 2010).

¶ 14                                    II. ANALYSIS

¶ 15    In reviewing a trial court order granting summary judgment, our review is *de novo. Farm Bureau Mutual Insurance Co. v. Alamo Rent A Car, Inc.*, 319 Ill. App. 3d 382, 385 (2000).

¶ 16    On appeal, the Hadarys argue that neither public policy nor statutes require Hertz to provide secondary coverage when a customer's personal policy limits are less than the minimum financial responsibility amounts required of rental companies. In response, Safeway argues that the rental agreement between Hertz and Velez does not absolve Hertz of liability in an accident caused by the negligence of a Hertz customer.

¶ 17    As a preliminary matter, we address a motion to strike the Hadarys' reply brief because it contains certain "false statements which are not supported by the record on appeal." Because we rely on the record rather than the Hadarys' characterization of how Safeway handled the underlying settlement with American Access, we deny Safeway's motion to strike.

¶ 18    The question before us is: when injured insureds are not wholly covered by a negligent driver's insurance policy limits, does the rental car company or the insureds' underinsured motorist coverage pay the shortfall? We conclude that it would contravene public policy to construe Safeway's policy to mean that a rental car company's liability pursuant to the financial responsibility statute applies before Safeway's obligations under the underinsured motorist provision. For the reasons that follow, we reverse.

¶ 19    In construing the insurance policy at issue, we are guided by the Second District's decision construing an underinsured motorist provision and accompanying exhaustion clause similar to the one in the case at bar (*American Family Mutual Insurance Co. v. Hinde*, 302 Ill. App. 3d 227, 232 (1999)):

> "When construing insurance policies, the policy should be enforced as written unless the policy provision in question is ambiguous or contravenes public policy. *Pahn v. State Farm Mutual Automobile Insurance Co.*, 291 Ill. App. 3d 343, 345 (1997). In determining whether there is an ambiguity, the provision in question cannot be read in isolation but must be read with reference to the facts of the case at hand. *Hoglund* [*v. State Farm Mutual Automobile Insurance*, 148 Ill. 2d 272, 279 (1992)]; *Gibbs v. Madison Mutual Insurance Co.*, 242 Ill. App. 3d 147, 152 (1993). It also must be read in conjunction with the policyholder's reasonable expectations and the coverage intended by the insurance policy. *Cummins v. Country Mutual Insurance Co.*, 178 Ill. 2d 474, 485 (1997)."

We note that Illinois case law recognizes that a *per se* rule that the "insurer of a vehicle, rather than that of the driver, must always provide primary coverage makes no sense in the context of rental cars." *State Farm Mutual Automobile Insurance Co. v. Hertz Claim Management Corp.*, 338 Ill. App. 3d 712, 719 (2003).

¶ 20    The purpose of financial responsibility insurance is to protect those who would otherwise be uninsured, not to protect other insurance companies. *Insurance Car Rentals, Inc. v. State Farm Mutual Automobile Insurance Co.*, 152 Ill. App. 3d 225, 232 (1987). The financial responsibility statute affecting car rental agencies is intended to protect the public from negligent drivers of rented vehicles and is intended to provide some, but not necessarily total,

- 5 -

protection. *Fogel v. Enterprise Leasing Co. of Chicago*, 353 Ill. App. 3d 165, 176 (2004); *Insurance Car Rentals, Inc.*, 152 Ill. App. 3d at 236.

¶ 21     On the other hand, the purpose of underinsured motorist coverage is to cover the shortfall between the amount of insurance contracted for and the amount received from the liable driver. *Cummins*, 178 Ill. 2d at 485. Underinsured motorist coverage aims to place the insured "in the same position he would have occupied if injured by a motorist who carried liability insurance in the same amount as the policyholder." *Sulser v. Country Mutual Insurance Co.*, 147 Ill. 2d 548, 558 (1992). The Illinois Insurance Code defines "underinsured motor vehicle" as a

> "[M]otor vehicle whose ownership, maintenance or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily injury liability insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle, is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident. The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily injury insurance policies, bonds or other security maintained on the underinsured motor vehicle." 215 ILCS 5/143a-2(4) (West 2008).

Finally, underinsured motorist coverage is intended only to assure compensation for insureds' injuries in an amount equal to their policy limit for coverage; it is not intended to allow insureds to recover amounts from an insurer over and above coverage provided by the underinsured motorist policy. *Marroquin v. Auto-Owners Insurance Co.*, 245 Ill. App. 3d 406, 409 (1993) (denying underinsured motorist coverage to an insured who bargained for $50,000 of underinsured motorist coverage and recovered that amount from the negligent driver's policy despite the fact that the insured's injuries amounted to $150,000).

¶ 22     The legislature's goals in providing for underinsurance coverage (see 215 ILCS 5/143a-2(4) (West 2008)) are relevant to the question at hand. In providing for underinsured motorist coverage in addition to uninsured motorist coverage,[2] the legislature "avoided the absurdity of a situation where a policyholder would receive fewer benefits in the fortuitous event of being injured by an underinsured rather than by an uninsured motorist." *Sulser*, 147 Ill. 2d at 557. The position advanced by Safeway–that Hertz's liability under the financial responsibility statute is triggered before the underinsured motorist coverage–would result in a similar absurdity. Safeway's position would result in a situation where a policyholder would receive more benefits in the fortuitous event of being injured by a car owned by a rental car company rather than one *not* owned by a rental car company. We find such a fortuitous event could not have been intended by the legislature.

¶ 23     This finding is further supported in the case of self-insured rental car companies. As previously stated, the financial responsibility statute provides for three methods for rental car companies to give proof of financial responsibility: a bond, an insurance policy, or a certificate

---

[2]See 215 ILCS 5/143a (West 2008). If the uninsured motorist coverage limit exceeds the minimum liability limit required by the financial responsibility statute for motor vehicles, then the policy must also include underinsured motorist coverage in an amount equal to the uninsured motorist coverage. 215 ILCS 5/143a-2(4) (West 2008).

of self-insurance. 625 ILCS 5/9-102 *et seq.* (West 2008). Many rental car companies have the financial resources to file a certificate of self-insurance. See generally *Beck v. Budget Rent-A-Car*, 283 Ill. App. 3d 541, 544 (1996); *Robinson v. Hertz Corp.*, 140 Ill. App. 3d 687, 687-88 (1986). Rental car companies that file a certificate of self-insurance are not limited in their financial responsibility liability to the $50,000 minimum per person as are rental companies who file a bond or an insurance policy. *Nelson v. Artley*, 2014 IL App (1st) 121681, ¶ 31. Assuming Safeway's position were true–that Hertz's liability under the financial responsibility statute is triggered before the underinsured motorist provision of the Safeway policy–then people injured by a self-insured rental car company would enjoy an unlimited amount of compensation as compared to the $50,000 maximum compensation per person from rental companies that filed a certificate of insurance or a bond. Surely this is also a fortuitous event that the legislature did not intend. See also *Sulser*, 147 Ill. 2d at 556 (noting that the underinsured provision was meant to "fill the gap" between the claim and the tortfeasor's insurance and was not intended to allow the insured to recover amounts from the insurer over and above the coverage provided by the underinsured motorist policy).

¶ 24    Not only does our decision avoid unintended effects of the financial responsibility statute but the purpose of the financial responsibility statute would be furthered if Safeway's underinsured motorist provision was applied before Hertz's liability pursuant to the financial responsibility statute. One purpose of the financial responsibility statute is to protect the public, not other insurance companies. *Insurance Car Rentals, Inc.*, 152 Ill. App. 3d at 232. If Hertz were forced to pay the Hadarys' shortfall, the outcome would insulate Safeway, another insurance company, and would not at all protect the Hadarys or injured insureds like them.

¶ 25    Our decision gives the Hadarys exactly what they paid a $57 premium for and what they bargained for from their insurance policy. See generally *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 68 (2011); *Cummins*, 178 Ill. 2d at 485. Illinois courts have declined to interpret insurance policies in a way that denies insureds economic value in return for having paid certain premiums. See *Hinde*, 302 Ill. App. 3d at 233; *Illinois Emcasco Insurance Co. v. Continental Casualty Co.*, 139 Ill. App. 3d 130, 133 (1985). In *Hinde*, the court expressed concern that the insurer's interpretation of its underinsured motorist provision would effectively have denied "substantial economic value" to the insureds in return for premiums they paid. *Hinde*, 302 Ill. App. 3d at 233 (citing *Cummins*, 178 Ill. 2d at 485). The court decided that the exhaustion provision of the underinsured motorist provision was satisfied when third parties, in addition to the tortfeasor's insurer, contributed to the insured's recovery as long as the insured's total recovery equaled the policy limits of the tortfeasor's automobile policy. *Id.* at 235. In so ruling, the court rejected an interpretation of the exhaustion provision to require all of the payment to come from the tortfeasor's policy. *Id.* at 233. Similarly, requiring exhaustion of Hertz's financial responsibility liability would deny the Hadarys the economic value of their underinsured motorist coverage for which they paid a premium. The fact that the Hadarys paid a $57 premium for underinsured coverage while Velez declined primary coverage and paid only the cost to rent a car from Hertz supports the conclusion the Hadarys should benefit from their foresight in paying for an option that would protect them in the case of injury by an underinsured motorist. See also *Insurance Car Rentals, Inc.*, 152 Ill. App. 3d at 234 (finding that a rental car company was not the primary insurer of a vehicle when it offered insurance coverage to a customer who chose to rely on his own insurance and the customer did not pay a premium to the rental company for its insurance).

¶ 26    The often cursory approach to rental car agreements further persuades us that Safeway's underinsured motorist provision applies before Hertz's liability under the financial responsibility statute. See *State Farm Mutual Automobile Insurance Co. v. Hertz Claim Management Corp.*, 338 Ill. App. 3d at 719. In rejecting the argument that the vehicle's owner rather than the driver's insurance must provide primary insurance, the court in *State Farm* relied on a case which highlighted the difference between rental car insurance and personal automobile insurance:

> " 'A car rental customer is not in a position to sit down and carefully consider the coverage provided in the rental agreement, nor is the rental agency able to carefully examine the driving history of a customer renting its vehicles. *** On the other hand, when a customer buys coverage on their personal automobile, both customer and prospective insurer can reflect on the terms and investigate each other before signing a policy.' " *State Farm v. Hertz*, 338 Ill. App. 3d at 719 (quoting *New Hampshire Indemnity Co. v. Budget Rent-A-Car Systems, Inc.*, 64 P.3d 1239, 1243 (Wash. 2003)).

This analysis supports the conclusion that the Hadarys would have been in a better position to reflect on the terms of the Safeway policy than Velez would have been when signing the Hertz rental car agreement.

¶ 27    The differences between the Safeway and Hertz policies as a whole and the coverage each provides reinforce the reasons to apply Safeway's policy first. In a similar case where two insurers both purported to provide only secondary coverage, the court analyzed the two types of coverage before determining that one applied before the other. *Emcasco*, 139 Ill. App. 3d at 133. Comparing an umbrella and a nonumbrella policy, the court said that an umbrella policy "remains an umbrella policy in all instances except under limited circumstances where the policy provides for primary coverage. The [nonumbrella] policy, however, provides primary coverage in almost all regards. In only one instance, namely, with respect to a judgment involving a nonowned automobile, does the [nonumbrella] policy provide excess coverage." *Id.* Ultimately, the court found the primary policy to apply before the umbrella policy despite an escape clause in that primary policy purporting to provide only excess insurance. *Id.* at 132-34. Using the reasoning of that case, it is the Safeway policy that is akin to the nonumbrella policy, providing primary coverage in every way with one exception. The Hertz policy, on the other hand, is akin to the umbrella policy, explicitly not providing primary coverage. Relying on the reasoning of *Emcasco* leads to the conclusion that the primary insurance of Safeway's policy applies before the insurance of Hertz's policy.

¶ 28    It is worthwhile to note that in at least two cases we have reversed the trial court's imposition of liability pursuant to the financial responsibility statute. *Fogel*, 353 Ill. App. 3d at 175; *Dotson v. Agency Rent-A-Car, Inc.*, 101 Ill. App. 3d 804 (1981). The case where liability was affirmed is distinguishable. *Fellhauer v. Alhorn*, 361 Ill. App. 3d 792 (2005).

¶ 29    We reversed the imposition of liability on Enterprise under the financial responsibility statute in *Fogel*, 353 Ill. App. 3d at 175. In that case, the trial court had ruled that Enterprise was liable for $50,000 in accordance with the financial responsibility statute but was not required to provide supplemental liability insurance because the company unknowingly contracted with an underage customer for said insurance. *Id.* at 170. We reversed the portion of the decision imposing liability pursuant to the financial responsibility statute. *Id.* at 175. We then reviewed the public policies behind the financial responsibility statute and concluded that neither the language in the financial responsibility statute nor public policy barred Enterprise's

- 8 -

rental agreement from shifting primary liability to the underage driver's insurer. *Id.* at 176-77. The purpose of the financial responsibility insurance, we stated, was to protect those who would otherwise be uninsured, not to protect other insurance companies, and if the court had decided that Enterprise was required to provide liability insurance under the financial responsibility statute, it would be protecting the underage driver's insurer, not the public. *Id.* We concluded: "[w]e find no basis for liability of Enterprise under the minimum financial responsibility statute." *Id.*

¶ 30    In *Dotson*, the trial court had found that the rental car company was required to pay $50,000 pursuant to its financial responsibility obligations when its customer, who was covered by a separate automobile policy, negligently caused injuries to a third-party. *Dotson*, 101 Ill. App. 3d at 804. We reversed that conclusion, stating that nothing in the financial responsibility statute "intended to subordinate the remedies available to an insured under existing policies, to those remedies provided by said statute." *Id.* at 808. We found that the rental car's policy was not "other insurance" that would preclude the application of the primary policy. *Id.* at 807.

¶ 31    In *Fellhauer*, the Fourth District found that a rental car agency was responsible for the injuries caused by its customer who was, at the time of the accident, uninsured and who had declined any insurance coverage with Enterprise. *Fellhauer*, 361 Ill. App. 3d at 793. Unlike the other two cases, the focus of the Fourth District's inquiry was what portion of the $450,000 default judgment against its customer was Enterprise responsible for as a self-insurer car rental company. *Id.* at 795. The Fourth District affirmed the trial court's imposition of liability on Enterprise in the amount of $50,000. *Id.* That conclusion was subsequently rejected in *Nelson v. Artley*, 2014 IL App (1st) 121681, ¶ 31, which found that self-insurers' liability was not limited to the $50,000 amount of the financial responsibility statute. In addition to its questionable validity in the wake of *Nelson*, the case is further distinguishable because the customer in *Fellhauer* had no insurance whatsoever unlike Velez in our case who had insurance and whose insurer had fully depleted that policy's limits. *Id.*

¶ 32    Because we find that Safeway's underinsurance motorist coverage is triggered, we need not address the Hadarys' second issue: whether Safeway waived any right to insist upon exhaustion of Hertz's policy.

¶ 33    We address the Hadarys' third issue: "whether Safeway may refuse to arbitrate the underinsured motorist claim until the Hertz coverage is exhausted, when Hertz has denied coverage and the Hadarys would still have an Underinsured Motorist claim against Safeway after the purported coverage was exhausted" to the extent that our ruling requires. Because Safeway's underinsured motorist provision applies before the financial responsibility liability of Hertz, Safeway is obligated to comply with the process for handling underinsured motorist claims set out in its policy: "the amount thereof, shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration."

¶ 34    Finally, we review the trial court's decision to deny the Hadarys relief, including attorney fees, under section 155 of the Illinois Insurance Code. 215 ILCS 5/155(1) (West 2008). An award of attorney fees is a matter for the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Fassola v. Montgomery Ward Insurance Co.*, 104 Ill. App. 3d 825, 832 (1982). We acknowledge that there are factors indicating Hertz's priority, including that the statutorily mandated minimum for a motor vehicle's insurance policy is less than the statutorily mandated financial responsibility liability for a rental car company.

Compare 625 ILCS 5/7-601(a), 7-203 (West 2008), with 625 ILCS 5/9-105 (West 2008). Because of this and the paucity of case law addressing this issue, we do not find that Safeway's conduct was vexatious and unreasonable. Safeway's interpretation of its policy was a viable one, but with the facts of this case, that interpretation contravened public policy. The trial court did not abuse its discretion in finding that there was no violation of section 155 of the Illinois Insurance Code.

¶ 35    Reversed in part and affirmed in part.